## JAY GOULD BROWN v. STATE.

No. A-1317.   Opinion Filed August 26, 1912.

(126 Pac. 263.)

1.   LARCENY—Cattle Theft—Evidence.   Evidence on a prosecution for larceny of cattle held sufficient to sustain a conviction.

2.   SAME—Nature of Offense—Intent.   The evidence in this case disclosed that the defendant is either guilty as a principal, or else is not guilty at all.   There is no evidence in this record that proves the defendant guilty as a receiver of stolen property, as defined by the statutes of Arkansas in force in the Indian Territory at the time this crime was committed.

3.   APPEAL—Review.   Where there is evidence in the record from which the jury could have legitimately drawn the conclusion that the defendant was guilty, this court will not disturb the verdict.

4.   TRIAL—Circumstantial Evidence—Instructions.   In a prosecution for larceny, where circumstantial evidence is introduced, there is no necessity for a specific instruction upon the value of circumstantial evidence; it being sufficient that the jury be clearly instructed that, unless, after due consideration, they are satisfied beyond a reasonable doubt of the guilt of the defendant, they should acquit.

5.   EVIDENCE—Weight and Sufficiency.   A jury is not bound to accept as true the theories or testimony of the defendants, but may give them such weight as they deem proper, even to the extent of wholly disregarding the same, if they believe the testimony unworthy of belief.

(Syllabus by the Court.)

. *Appeal from District Court, Atoka County;*
*Robt. M. Rainey, Judge.*

Jay Gould Brown was convicted of cattle stealing, and he appeals.   Affirmed.

*J. G. Ralls*, for plaintiff in error.

*Chas. West*, Atty. Gen., and *Smith C. Matson* and *E. G. Spilman*, Asst. Attys. Gen., for the State.

· DOYLE, J.   The plaintiff in error, Jay Gould Brown, was indicted in the United States Court for the Central District of the Indian Territory for the larceny of certain cattle.

Upon a trial in the district court of Atoka county, to which court the case was transferred after statehood, the jury by their verdict found the defendant guilty, but failed to agree upon the punishment.

On May 2, 1911, the court overruled a motion for new trial, and sentenced the defendant to imprisonment in the penitentiary for a term of one year and nine months. From which judgment an appeal was perfected by filing in this court, on August 18, 1911, a petition in error with case-made attached. The defendant failed to execute an appeal bond, and is now confined in the penitentiary.

It is contended in support of the appeal that the evidence tending to show the commission of the crime of larceny by the defendant is not sufficient to support the verdict.

The evidence, briefly stated, shows: That William Tipton, a farmer living about three miles southeast of the town of Atoka, in what was then the Central District of the Indian Territory, was, on September 15, 1903, the owner of the two head of cattle described in the indictment. Said cattle were branded "W. T. bar" on the left side, and that on or about said day he missed said cattle from the range. That he gave no person permission to take them or to sell them. That about three days afterwards he found the cattle in the pasture of William Minton, a butcher in the town of Lehigh. That Lehigh is about twelve or fourteen miles northwest of where witness lived.

Will Gray testified: That he had known the defendant for about twenty years, and saw him in September, 1903, near Bassett's slaughter pen northwest of the town of Atoka, together with his brothers Jack and Toronto. That they were driving cattle in the direction of Lehigh. The cattle were branded "W. T. bar."

William Minton testified that he lived in Lehigh, and was running a meat market in 1903; that along about the middle of September he bought the two head of cattle described in the indictment from the defendant, Jay Gould Brown, but that

William Tipton came and claimed them on the second day after he bought them; that he paid Jay Gould Brown $27.50 for them; that he saw Toronto Brown out there at the pasture when he brought the cattle, but did not see Jack Brown at the time.

On behalf of the defendant, Toronto Brown testified that he and his brother Jack took the cattle from the range a little before daylight, and drove them about four miles to their father's place, arriving there a little after sunup; that he called his brother Jay Gould Brown, the defendant, and got a horse for him, and told him that he wanted him to go to Lehigh to sell some cattle; that the three brothers then drove the cattle from their father's to Lehigh, where the defendant, Jay Gould Brown, sold the cattle to Bill Minton and afterwards gave witness the money he received for them.

On cross-examination, witness testified that when he was tried for stealing these cattle in the United States Court he testified on his own behalf that he did not steal the cattle; that he was tried twice for this cattle theft; that the first time he was found guilty, and on his second trial not guilty.

The defendant, Jay Gould Brown, testified on his own behalf: That his brother Toronto asked him to go to Lehigh with him, and there sent him after Mr. Minton. When Mr. Minton went to look at the cattle, Toronto rode off, and that he sold the cattle to Mr. Minton and afterwards turned the money he received over to Toronto. That he did not know anything about his brothers going to get the cattle, and that they did not tell him how they got the cattle, and he did not know whose cattle they were.

This is substantially all the evidence in the case.

The contention is made that Toronto and Jack Brown stole the cattle some time prior to the aforesaid driving and disposing. In other words, it is claimed that the cattle were stolen before the defendant assisted in driving them to Lehigh, and that the defendant had no knowledge that they had been stolen, and therefore the cattle could not be stolen again by the defendant; that if the defendant knew the cattle were stolen he

would have been guilty, under the statutes of Arkansas, of the crime of receiving stolen property.

The Attorney General contends that the evidence introduced on behalf of the state is wholly sufficient to sustain the verdict, and that it was a question of fact for the jury to determine, under all the evidence, whether or not the theory of the state was true that the defendant was a principal and assisted in the unlawful taking of property, or whether the theory of the defendant was true that the defendant was not present at the taking of the property, and had no knowledge of the larceny, or that it was to take place, and had no knowledge that the cattle were stolen cattle, but that all the connection he had with the transaction was perfectly innocent, in that he, in good faith, assisted his brothers in driving the cattle from his home to Lehigh, and there sold them to the butcher with the honest belief that they were the property of his brothers.

The testimony of Toronto Brown and the defendant on his own behalf is so contradictory and the story told of itself so unbelievable that they impeach themselves. Their own testimony tends to show that he is guilty as a principal. The issue here is that it is a question of the intent with which the defendant entered into the asportation of the property and the disposal of it; and if he did with the intent of stealing the property and depriving the owner of it he is guilty as a principal, and not as a receiver of stolen goods, under the statute. The right of possession, as well as the right of property, remained in the owner all the time, as a matter of law, if the original taking and transportation of the property was under such circumstances as constituted a larceny. *Bivens v. State,* 6 Okla. Cr. 621, 120 Pac. 1033.

The larceny was not complete until the delivery to the butcher. The evidence of the defense does not show that the crime was complete, or that they had left the cattle there at his father's house. It shows that they were in the act of driving these cattle, and that the defendant joined in to assist in driving them. Then, assuming their testimony to have been true, the

evidence is such, and all the circumstances surrounding the defendant's connection with the case are such, as to lead to but one conclusion, and that is that he must have known that his brothers were in the act of stealing these cattle, and were driving them on to the place of sale, and he voluntarily joined in with them and assisted them in accomplishing their design. He knew that his brothers did not have any cattle of this kind; he knew that they were not branded in their brand; he knew that they were bringing them there early in the morning and woke him up to assist them. When they reached Lehigh, under his own statement, the conduct of his brother Toronto was such as must have convinced him that the cattle were stolen, because his brother would not go up to the town of Lehigh to assist in selling the cattle, and as soon as he saw the butcher coming to look at the cattle he says that Toronto drove over the hill and out of sight, so as not to be seen. This was a circumstance certainly sufficient to convince the defendant that the cattle were stolen, and afterwards he sells the cattle and takes the money into his own possession, fixing upon a price to be paid for the cattle without consulting his brothers; yet he testified that he had no interest in the cattle, and did not have any agreement with his brothers as to the price that they should bring. Such evidence, taken in connection with the fact that he was seen driving the cattle by the witness Gray, is convincing that he was a principal in the larceny of these cattle.

Toronto Brown, having been acquitted of the crime by denying any knowledge whatever of the larceny of the cattle, now appears in court and, for the purpose of acquitting his brother, testifies that he is the thief, and that his brother, this defendant, had nothing whatever to do with the stealing, and did not even know that the cattle were stolen. We are not surprised at the fact that the jury wholly disregarded and refused to believe such a flimsy fabrication as this, given for the sole purpose of procuring an acquittal of his brother of a crime of which they were all three guilty, and the jury is to be commended for refusing to discharge this defendant, even though another jury was hoodwinked into acquitting his brother Toronto.

Juries are not bound to accept as true the theories or the testimony of defendants, but may give it such weight as they deem proper, even to the extent of wholly disregarding the same, if they believe such testimony unworthy of belief. Under the statute in force in the Indian Territory, a receiver of stolen goods is defined as follows (section 574, Ind. Ter. St. 1899 [section 163, Mansf. Dig. Ark.]):

"Whoever shall receive or buy any stolen goods, moneys or chattels, knowing them to be stolen, with intent to deprive the true owner thereof, shall, upon conviction, be punished as is or may be by law prescribed for larceny of such goods or chattels."

It cannot be contended that under the evidence in this case the plaintiff in error is guilty of the crime of receiving or buying the stolen cattle, knowing them to be stolen. The proof is not that he bought the cattle from his brothers, or received them from them, but that he aided and assisted them in driving the cattle to the place of sale and took possession of the proceeds of the sale. We have nowhere found any authorities that say such conduct amounts to a receiving of stolen property. Therefore this defendant is guilty as a principal, or else he is not guilty of any crime.

Larceny has been held to be a continuing offense; and statutes providing that the thief may be prosecuted in any county into which he takes the stolen goods have been held to be constitutional, where the provisions of the Constitution are that the prosecution must be in the county where the crime is committed. *Bivens v. State, supra*; 2 Bishop's New Crim. Law, par. 839; 1 Bishop's New Crim. Proc. par. 59.

Upon this theory, one who joins in with the thieves and assists in the asportation and disposal of stolen property, knowing at the time he does so that the others acting with him are in the very act of carrying away the property of another, must be held guilty as a principal.

In the case of *State v. Grant*, 76 Mo. 245, the court said:

"It has been strenuously insisted that the larceny was complete at the time that the defendant and his companion passed by Fleming's saloon, and in one sense this is true. But it is also

true, considering the distance from where the prisoner was observed with the butter to the point where the larceny of it was committed, from 300 to 500 yards, there was sufficient evidence to go to the jury that the taking of the butter, and its being carried away, was, up to the point where the prisoner was observed, one continuous act. If a person, with larcenous intent, should barely raise an article from the floor, the caption and asportation would be so far complete as to make the act a criminal one. But could the act as to one of the elements of the larceny, the asportation, be still regarded incomplete—be still regarded a continuing act—as long as the original caption was still unbroken, and the original asportation was yet in progress? We are of opinion that so it should be regarded."

The issue of the defendant's guilt was fairly submitted under the instructions given by the court. We do not think the case calls for specific instructions of the kind the defendant's counsel now contends should have been given. The evidence, when properly viewed, tended either to acquit or convict the defendant, without the necessity of any special consideration as to the rule in regard to circumstantial evidence. The case was without complication, and depended merely upon the credit which the jury should attach to the testimony of the defendant and his brother Toronto Brown, when considered with the undisputed facts in the case.

Instructions were given as follows:

"If you believe from the evidence in this case the defendant Jay Gould Brown acted in good faith and in honest belief that the cattle which he drove to Lehigh and sold to William Minton were the property of his brother Toronto Brown, or Jack Brown, or both, or if you have a reasonable doubt that such was the case, it will be your duty to acquit him, even though you believe said cattle were taken by Toronto or Jack Brown, or both.

"But if you believe from all the evidence in the case beyond a reasonable doubt, that at the time the defendant, Jay Gould Brown, drove the cattle to Lehigh, or assisted in driving them, and at the time he sold them to the witness William Minton, he knew said cattle were the property of William Tipton, he would be guilty of larceny, and it will be your duty to convict him.

"If, on the whole of the evidence in this case, you entertain a reasonable doubt as to the guilt of the defendant, that doubt

should be resolved in favor of the defendant, and you should acquit him."

We think these instructions fully covered the matter. Our conclusion is that the guilt of the defendant was established beyond any doubt; and finding no error in the record the judgment of conviction is affirmed.

FURMAN, P. J., and ARMSTRONG, J., concur.