EARL CLOTHIER v. STATE.

No. A-7326. Opinion Filed Jan. 31, 1931.
(295 Pac. 627.)

J. P. Wishard, for plaintiff in error.

J. Berry King, Atty. Gen., for the State.

DAVENPORT, P. J. The plaintiff in error, Earl Clothier, was jointly informed against with James Demmitt, Charles Demmitt, and Ray Demmitt; was tried separately and convicted of larceny of domestic fowls in the nighttime; and sentenced to be confined in the state penitentiary at Granite for a period of three years, from which judgment the defendant has appealed.

The testimony on behalf of the state in substance is as follows:

A. A. Thurman, the prosecuting witness, testified:

"I live in Okeene, Blaine county, Okla. On the 4th day of March, 1928, I had 26 hens and one rooster. I counted the chickens on the 4th day of March, 1928, before I turned them out, and started to work. On the 14th of March, 1928, at McComas Produce House, in Garfield county, I discovered my chickens. I went to Enid and recognized the Demmitt boys who lived about four and one-half miles from me. The defendant had been arrested and was in jail at Enid with the Demmitt boys. I returned my chickens to my home and they went to roost in a coop; I positively identified the chickens that I missed on the 4th day of March, 1928. I belong to an organization and people contributed to the organization which had for its object the prosecution of cases like this one."

Paul Kreie testified:

"I am a produce dealer at Waukomis. Charles Demmitt and Earl Clothier brought to my place, on the 13th of March, 1928, a number of chickens. It was at the noon hour. The chickens were brought in a Chevrolet roadster, and was loose in the rear end. I paid for the chick-

ens with a check made payable to J. B. Johns. The defendant in this case did not take the check; the check shows to have been paid on the 14th day of March, 1928."

Don Parker testified as follows, for the state:

"I am an employee of the Home Oil Company, of Waukomis, and was on the 14th day of March, 1928. At noon Earl Clothier asked to call up the produce man."

Charles Allen stated:

"I am a deputy sheriff. I know the defendant. I knew him on the 14th of March, 1928. Clothier lived southeast of Enid. I made the arrest of Earl Clothier and the Demmitt boys. Clothier told me to come to Enid on the Lahoma road instead or the Waukomis road. After he understood the question he told me he came in on the Waukomis road; said the chickens were gotten down to the Demmitt boys' mother's place. Clothier said he went to the Demmitt home from Enid on the 11th day of March, 1928. I searched the Demmitt boys and Clothier and got $32.00 or $33.00."

On cross-examination witness stated he got $20 from Earl Clothier, and maybe some change and that he had never arrested Clothier before.

B. B. Bridgeford testified the chickens were brought to town and were turned over to A. A. Thurman.

At the close of the testimony of B. B. Bridgeford, the state rested. The defendant demurred to the evidence, for the reason that there is nothing shown that he was present or had anything to do with the stealing of the chickens on the 4th day of March, 1928, or at any other time; that the only connection shown was that he helped sell the chickens in Waukomis, Okla., on the 13th or 14th day of March, 1928. The demurrer was overruled and the defendant duly excepted.

The state then asked to reopen the case and introduce further testimony, to which the defendant objected. The court granted the state leave to reopen the case for further testimony, and defendant excepted.

William Broady and Charles Julias were called on behalf of the state, and testified that they were down to the Demmitt place on the morning of the 13th of March, 1928; that the Demmitt boys and another boy by the name of Earl Clothier drove out to the Demmitt farm lot as they drove in. The witnesses admitted that they belonged to an organization for the prosecution of the state cases such as the defendant was being tried for, and that they had contributed money to, and were interested in, said case.

The defendant, Earl Clothier, as a witness in his own behalf, testified that, prior to the 10th day of March, 1928, his home was at Chester, Okla., in the western part of Major county; that he had lived on the farm 14 years. The defendant admitted that he was acquainted with the Demmitt boys; that these boys used to live on a farm near where the defendant lived; that they had left the Chester neighborhood, but had visited back and forth once in a while, there being probably six months or a year between the visits. The defendant further stated as follows:

"On the 9th or 10th of March, 1928, I was going to Enid from the farm to get a job of work. Enid was closer to Chester than Oklahoma City. I had $25 I had borrowed at the First National Bank at Seiling. I got this money by having my father sign the note with me. My brother took me to Enid on the 10th of March, 1928, which was Saturday. I met the Demmitt boys in Enid Saturday evening, and the Demmitt boys asked me to go out to their place. I went out to the Demmitt home, and was there all that evening. I did not steal these chickens or have anything to do with the stealing of them, nor did I accompany any one who did steal them. On Monday we worked

on a car; Monday evening we stayed at the Demmitt home. We did not steal any chickens on Monday night. The Demmitt boys' mother gave them some chickens so they could get some money to go on a trip to hunt work. At that time I did not know anything about the stealing of chickens of any kind. I got in the car with the Demmitt boys and started to Enid. They stopped at Waukomis because the chickens were hot and the Demmitt boy sold the chickens and the check was made to him. I do not know why Charles Demmitt told them to write the check in the name of J. R. Johns and I do not know what became of the money. I got no part of the proceeds of the sale of the chickens, and had nothing to do with either the stealing or selling of the chickens."

A. C. Clothier testified that he was the father of Earl Clothier; that the Demmitt boys had formerly lived out near his home.

"I helped my boy Earl get $25.00 from the First National Bank of Seiling, Oklahoma, on the Saturday before he went to Enid on the 10th. I paid the note to the bank. Earl was at home; came home on the 4th of March, 1928."

Mrs. A. C. Clothier, Earl's mother, testified to practically the same as his father: On the 10th of March she took Earl to Enid to look for work. He had $25 that he had borrowed at the bank. She and Earl went to Enid on Saturday, and she remained over in Enid Saturday night and returned home Sunday morning.

Ralph Clothier, a brother of the defendant, testified:

"I lived at Isabel. I lived there a year. I am married and have a family. On or about the 3d day of March, 1928, I had the flu and sent for my brother to come and take my place. He worked on Saturday and Sunday, and stayed at my home and spent the evening and night there, and went back to his father's home on Monday."

Seymour Cuyler, M. C. Shook, W. M. Fields, Walter Harrison, and Harry Plummer all testified to having

known the defendant a number of years and that they lived in or near the community where the defendant lived, and stated that his reputation for being an honest and law-abiding citizen was good.

Ted Woods testified to seeing a copy of the note that was signed by Earl Clothier and A. C. Clothier.

This is in substance the testimony. The defendant has assigned several errors alleged to have been committed by the court in the trial of this case. The first assignment of error alleged to have been committed is that there was error committed in overruling the demurrer of the plaintiff in error to the information heretofore filed in said cause against said plaintiff in error. After a careful reading of the information, we hold that the said information stated facts sufficient to advise the defendant of the charge against him, and the court did not err in overruling his demurrer to the information.

The fourteenth assignment of the defendant is as follows:

"The court erred in not sustaining a motion for a new trial filed by the plaintiff in error, and overruled said motion for a new trial, to which the plaintiff in error duly excepted at the time."

Under this assignment all of the assignments of the defendant not heretofore discussed may be grouped, as they relate to the action of the court in the trial of the case, the admission of evidence, and the question as to whether or not the evidence is sufficient to sustain a sentence of guilty of larceny of domestic fowls in the nighttime.

The defendant in this case appeared at the Demmitt place on the 11th of March, 1928, where the chickens were that were identified by the prosecuting witness, Thurman.

The defendant did not deny that he went from the Demmitt place to Waukomis, with the Demmitt boys, where the chickens were sold.

The testimony further shows that the defendant had a party at a filling station call the produce dealer to ascertain if he was in, in order that they might sell the chickens. After the chickens were sold, the record further tends to show, the produce dealer became suspicious and followed the boys out of town, learned the way they had gone, and 'phoned to Enid to the sheriff, who arrested the Demmitt boys and the defendant.

The defendant had about $22.75 on him at the time he was arrested. He insists that he had borrowed $25 on the Saturday before from a bank at Seiling, Okla., and calls his mother and father to testify to that fact. No official of the bank where he claimed he borrowed the money was called as a witness.

The testimony further tends to show that, when the chickens were sold, the check was made payable to another name, and not the name of the defendant or the Demmitt boy who was with him.

The circumstantial evidence in this case points to the fact that the defendant was mixed up in the taking of these chickens, that the defendant knew the chickens were stolen, and assisted in the further asportation of the stolen chickens by assisting in taking them to the place where they were sold, and by reason of this action he was guilty of aiding and abetting in the larceny of the chickens.

In Reed v. State, 22 Okla. Cr. 141, 210 Pac. 311, 313, this court said:

"One who joins in with the thieves and assists in the asportation and disposal of stolen property, knowing at

the time he does so that the others acting with him are in the very act of carrying away the property of another, must be held guilty as a principal." Brown v. State, 7 Okla. Cr. 678, 126 Pac. 263.

Applying the rule laid down in Reed v. State, supra, to the evidence in this case, the evidence is amply sufficient to sustain the judgment. The defendant was accorded a fair and impartial trial. No errors appear in the record of sufficient merit to warrant a reversal. The judgment is affirmed.

EDWARDS and CHAPPELL, JJ., concur.