## HENRY McGEE v. STATE.

No. A-9112.   Feb. 12, 1937.
(65 Pac. [2d] 207.)

E. Blumhagen, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, J.    Upon information charging that in Blaine county, on or about the 20th day of October, 1934, Henry McGee, the defendant, did unlawfully, knowingly, and feloniously receive from Westbrook Sanders and K. C. Hughes certain automobile tires and service tubes, then and there knowing the same to have been stolen, he was upon trial found guilty as charged, the jury fixing his punishment at three years' imprisonment in the state penitentiary.

To reverse the judgment rendered in conformity with the verdict, he appeals.

One of the grounds of the motion for a new trial and assigned as error is that the verdict is contrary to the law and the evidence, and that the trial court erred in overruling the defendant's motion for a directed verdict of acquittal, made at the close of all the evidence.

The facts as shown by undisputed evidence are: That on the night of October 19, 1934, a service station in the city of Watonga, handling gasoline, tires, and tubes, was burglarized and 17 tires and four tubes were taken and carried a short distance to a cotton gin, and from there were carried to a wood pasture between four and five miles southwest of Watonga.  The next or second morning following, said Sanders and Hughes called at the home of

the defendant, Henry McGee, in Watonga, and arranged to have him drive them to Oklahoma City in McGee's car; there Westbrook Sanders made a deal to sell some tires. They then drove back to the place where the tires had been placed and the tires were put in McGee's car. They then returned to Oklahoma City, arriving there between 10 and 11 o'clock that night. After the tires were taken from his car that night, McGee returned to Watonga.

John Gose, sheriff, testified that the defendant, McGee, told him that Westbrook Sanders and K. C. Hughes hired him to haul the tires they had left out there; that with them he drove to the place southwest of Watonga, and while he stayed with his car, Sanders and Hughes went into a field and returned with the tires and loaded them into his car, and with Sanders and Hughes in the car he hauled them to Oklahoma City; that the defendant consented to go to Oklahoma City with him and show him the place where the tires were delivered; that driving along they passed Westbrook Sanders and K. C. Hughes, the defendant said, "There they are now," and he turned back and with a deputy arrested them.

Westbrook Sanders testified that he entered the filling station and took 16 tires and four inner tubes and a box of candy, that K. C. Hughes was with him, and they carried this stuff and put it behind a cotton gin a block or two away. Hughes then got scared and left and witness carried the tires four or five miles southwest of the city and hid them in the woods; the next day he told Henry McGee that he had some tires he wanted taken to Oklahoma City; the next morning with K. C. Hughes he went to McGee's house and from there they went in McGee's car to Oklahoma City, where he made a deal to dispose of the tires; that they then returned to the place where he

had put the tires. They loaded them in the car and returned to Oklahoma City; that he promised to pay McGee $9 for the trips, that McGee returned to Watonga in his car that night and he and Hughes remained in Oklahoma City. That they told McGee that this was stolen stuff. That he had formerly been convicted of another burglary.

K. C. Hughes testified that he helped carry the tires from the filling station to the cotton gin, he next saw them two or three days later in a pasture where he went with Westbrook Sanders and Henry McGee, that he was present when the arrangement was made to have the defendant haul the tires, and the three went to Oklahoma City and a deal was made; they then returned and put the tires in McGee's car and then returned to Oklahoma City, arriving there about 10:30 at night, and McGee returned to Watonga that night. Then he had been convicted of a felony and served the term.

The defendant in his own behalf testified that he had lived in Watonga about 26 years; that Westbrook Sanders and K. C. Hughes called at his house and Sanders said that he and Hughes were going to Oklahoma City, and that they had some stuff "he wanted me to carry," and after they got in the car and started they said it was casings, then they stopped at the Sherman filling station and got gasoline; they said they would pay for it, but Sherman charged it to him; and they returned that afternoon; Sanders directed him to the place; when they stopped Sanders said, "Hughes, get out"; "to me he said, 'Turn your car around.' When I did they came there each with an arm full of casings;" that he did not get out of the car. He then drove back on highway 27 to Oklahoma City. When they stopped, the fellow came out and Hughes said, "Well, we are here." "The fellow said the place is closed.

Hughes and this fellow got in a car and we followed them to 7 North Ellison;" there Hughes and Sanders took the tires out of the car. That he left these boys and this other man, and drove home. They told him they would see him in Watonga the next evening; that they were to pay him $4.50 for each trip, that they never have paid him. That two days later he went with the sheriff and a deputy to Oklahoma City and showed him the place where the tires were unloaded. That they were driving along the highway on the north edge of the city and he saw Sanders and Hughes standing on the street and said to the sheriff, "There they are." The sheriff turned back and arrested them; that he was arrested about five months later. That he is an ex-service man, a World War Veteran.

At the close of the evidence, the defendant interposed a demurrer thereto, and there was a motion for a directed verdict of acquittal, which was overruled.

This prosecution was based on Penal Code (section 2265, St. 1931) which declares:

"Every person who buys or receives, in any manner, upon any consideration, any personal property of any value whatsoever, that has been stolen from any other, knowing the same to have been stolen, is punishable" etc.

Before there can be a conviction for receiving stolen property, it must be shown (1) that the property has in fact been stolen by a person other than the one charged with receiving it; (2) that the one charged with receiving it actually received the property stolen; (3) that the receiver knew the property was stolen when he received it. Yeargain v. State, 57 Okla. Cr. 136, 45 Pac. (2d) 1113; Sipes v. State, 36 Okla. Cr. 1, 251 Pac. 511; Underwood v. State, 36 Okla. Cr. 21, 251 Pac. 507; Pringle v. State, 32 Okla. Cr. 166, 239 Pac. 948.

It is urged that there was no evidence tending to show that the defendant ever received or had possession of the stolen property.

Webster's Dictionary defines the word "receive" thus: "To take, as something that is offered, given, sent, paid, or the like; to accept."

The Century Dictionary gives the word this definition: "To take from a source or agency of transmission; to take by transfer in a criminal manner."

While it is undisputed that the defendant hauled in his car the property in question from a place in Blaine county to Oklahoma City, the self-confessed thieves were with him on the trip and directed his action. We find no evidence showing a transfer or relinquishment of their possession of the stolen property to the defendant.

The law declares that:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals." Section 1808, St. 1931.

There is some testimony in the record tending to show that the defendant, with knowledge that it was stolen property, assisted in the asportation of the same.

In the case of Brown v. State, 7 Okla. Cr. 678, 126 Pac. 263, 265, we said:

"Larceny has been held to be a continuing offense, and statutes providing that the thief may be prosecuted in any county into which he takes the stolen goods have been held to be constitutional, where the provisions of the Constitution are that the prosecution must be in the county where the crime is committed. Bivens v. State [6 Okla. Cr. 521, 120 Pac. 1033]. * * *

"Upon this theory, one who joins in with the thieves and assists in the asportation and disposal of stolen property, knowing at the time he does so that the others acting with him are in the very act of carrying away the property of another, must be held guilty as a principal."

In Reed v. State, 22 Okla. Cr. 141, 210 Pac. 311, this court held:

"One who joins in with thieves and assists in the asportation and disposal of stolen property, knowing at the time he does so that the others acting with him are in the very act of carrying away the property of another, must be held guilty as a principal."

In Shacklett v. State, 23 Okla. Cr. 4, 211 Pac. 1063, the second syllabus is as follows:

"Where the evidence shows that the accused, charged with larceny, was not present at the original taking of the property, but that the goods were taken by a confederate implicated with the defendant, the asportation by the confederate to one place and a continuation of the asportation to another place by the accused does not make of the latter a receiver of stolen property."

The only testimony in the case that tends to connect the defendant with the receiving of the stolen property is that of the witnesses Sanders and Hughes, ex-convicts and the self-confessed thieves.

If this testimony tends to show that the defendant was guilty of any offense, it was the offense of grand larceny.

There being no evidence in the record showing that the defendant is guilty of the crime for which he has been convicted, the conviction cannot stand.

The judgment appealed from is therefore reversed.

DAVENPORT, P. J., and BAREFOOT, J., concur.