Garland HAIR, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12269.

Criminal Court of Appeals of Oklahoma.

March 7, 1956.

Lewis M. Watson, Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, Presiding Judge.

Garland Hair was convicted in the District Court of Pontotoc County for receiving stolen property and was sentenced to serve 4 years in the penitentiary. The proof of the State showed that on the night of November 10, 1954, a check protector and blank checkbook belonging to the Webco Drilling Company of Ada was stolen. Approximately one month later this property was discovered by a farmer in a small wash house at the back of a vacant house into which the farmer was moving. The sheriff was notified and the check protector together with a few blank checks still remaining in the checkbook were taken to the sheriff's office and there identified by an employee of the drilling company from whom they had been stolen.

Arthur Calvin testified that on November 9, 1954, he received a check from the Webco Drilling Company for wages he had earned as a roughneck on a drilling crew. That he showed the check to the defendant, Garland Hair, who told him that if they could steal the check protector and some blank checks, they could fill out the checks similar to the one which Calvin had in his possession and make some money on them. That they talked the matter over and decided to break into the drilling company office and steal the check protector and blank checks but that when it came time to go, the defendant said the moon was too bright and he refused to go. Calvin then went on by himself, entered the building through a window and stole the protector and a checkbook. He then drove by defendant's house, got the defendant out of bed and together they drove down to a spot near Lindsay where they filled out one of the checks and cashed it at Lindsay. They then started to return to Ada and in a pile of brush along the road near Wynnewood they hid the protector and checks. Twice after that Calvin and defendant returned to the brush pile and filled out checks and cashed them. On one occasion Calvin testified that he returned with one Sprouse Billy and they filled out a check and had it cashed. Later Calvin and Hair removed the protector and checks and placed them in a trunk in a shed back of Hair's house in Ada. Calvin was arrested on December 12, 1954, in connection with the passing of forged checks and was placed in the county jail at Ada. Immediately after he was placed in jail he told his wife to tell the defendant to get rid of the protector and checks.

Mrs. Arthur Calvin testified that shortly after her husband was placed in jail, she went to Garland Hair and told him that her husband said for him to get rid of the check protector and the blank checks. That she gave Hair the keys to their Pontiac automobile so he could use their car in disposing of the property.

V. L. Martin testified that he had rented a place near the Latta school house. That on December 12, 1954, he was cleaning up around the place preparatory to moving in the following day. That when he returned the next day, he found the check protector and blank checks in question in a shed. He had cleaned out the shed the evening before and the articles were not in it at that time. There were some fresh automobile tracks in the yard of the Martin place which officers examined, took pictures of and compared with the automobile tires on the Pontiac car belonging to Calvin. The officers testified that in their opinion the Calvin automobile made the tracks at the Martin place.

We shall only consider two of the many assignments of error presented in defendant's brief as the others are without substantial merit. First, was the evidence sufficient to sustain the conviction? Second, did the court commit reversible error in giving instruction number six?

Arthur Calvin was an accomplice and the jury should have been so instructed. However, when the trial court got ready to instruct the jury, counsel for the defendant told the court that he did not desire an instruction on accomplice testimony and none was given. In Smith v. State, 78 Okl.Cr. 375, 148 P.2d 994, 996, this court held:

"'The general rule of law is that a person who steals property is not an accomplice of the one who receives the property, knowing it to be stolen. They are independent crimes.

"'The well-recognized exception to this general rule is that if the one who steals and the one who receives the property conspire together, or enter into a prearranged plan for one to steal the property and deliver the same to the other, the one who receives it is the accomplice of the one who commits the theft, and vice versa. * * *

"'The statute providing that no person shall be convicted of a crime on the testimony of an accomplice, without corroboration, was adopted for the purpose of protecting an accused.'"

See also Comba v. State, 68 Okl.Cr. 373, 99 P.2d 170; Key v. State, 38 Okl.Cr. 169, 259 P. 659.

 The Attorney General concedes that the proof of the State showed that Hair was guilty of burglary because 'he participated in the conspiracy to burglarize the building and then assisted in the asportation of the stolen property after it had been removed from the building. However, it was contended that under the authority of Price v. State, 9 Okl.Cr. 359, 131 P. 1102, the State had the discretion of charging Hair with either the original taking or with receiving the stolen property. In the Price case the defendant Price, a butcher, had conspired with one Vaughn whereby Vaughn was to steal meat from a refrigerator car and sell it to Price for one-half its value. This court held that under the definition of accomplice the defendant Price was an accomplice in the larceny of the meat but that he was also guilty of receiving the stolen property and the county attorney could elect whether to try him for larceny or for the lesser crime of receiving stolen property. However, in McGee v. State, 60 Okl.Cr. 436, 65 P.2d 207, this court held:

> "One who joins in with thieves and assists in the asportation of stolen property, knowing at the time he does so that the others acting with him are in the act of carrying away the property of another, must be held guilty as a principal."

The proof in that case showed that Hughes and Sanders stole some tires and tubes from a service station. The next day they went to McGee and arranged to have him drive them to Oklahoma City in his car. The tires, and tubes were placed in McGee's car. Sanders, Hughes and McGee went to Oklahoma City where the tires were sold and McGee returned to his home at Watonga. In the body of the opinion this court stated:

> "It is urged that there was no evidence tending to show that the defendant ever received or had possession of the stolen property.

> "Webster's Dictionary defines the word 'receive' thus: 'To take, as something that is offered, given, sent, paid, or the like; to accept.'

"The Century Dictionary gives the word this definition: 'To take from a source or agency of transmission; to take by transfer in a criminal manner.'

"While it is undisputed that the defendant hauled in his car the property in question from a place in Blaine county to Oklahoma City, the self-confessed thieves were with him on the trip and directed his action. We find no evidence showing a transfer or relinquishment of their possession of the stolen property to the defendant.

"The law declares that: 'All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals.' Section 1808, St. 1931.

"There is some testimony in the record tending to show that the defendant, with knowledge that it was stolen property assisted in the asportation of the same.

"In the case of Brown v. State, 7 Okl.Cr. 678, 126 P. 263, 265, we said:

" 'Larceny has been held to be a continuing offense, and statutes providing that the thief may be prosecuted in any county into which he takes the stolen goods have been held to be constitutional, where the provisions of the Constitution are that the prosecution must be in the county where the crime is committed. Bivens v. State (6 Okl. Cr. 521, 120 P. 1033). * * *

" 'Upon this theory, one who joins in with the thieves and assists in the asportation and disposal of stolen property, knowing at the time he does so that the others acting with him are in the very act of carrying away the property of another, must be held guilty as a principal.'

"In Reed v. State, 22 Okl.Cr. 141, 210 P. 311, this court held: 'One who joins in with thieves and assists in the asportation and disposal of stolen property, knowing at the time he does so that the others acting with him are in the very act of carrying away the prop-

erty of another, must be held guilty as a principal.'

"In Shacklett v. State, 23 Okl.Cr. 4, 211 P. 1063, the second syllabus is as follows: 'Where the evidence shows that the accused, charged with larceny, was not present at the original taking of the property, but that the goods were taken by a confederate implicated with the defendant, the asportation by the confederate to one place and a continuation of the asportation to another place by the accused does not make of the latter a receiver of stolen property.'

"The only testimony in the case that tends to connect the defendant with the receiving of the stolen property is that of the witnesses, Sanders and Hughes, ex-convicts and the self-confessed thieves.

"If this testimony tends to show that the defendant was guilty of any offense, it was the offense of grand larceny."

The McGee case appears to be conclusive that the defendant Hair in the instant case is guilty of the original taking and not of receiving stolen property. As pointed out in the McGee case, supra, before a person can be guilty of receiving stolen property, the thief must have transferred or relinquished his possession of the property. Here Calvin retained possession and control of the property at all times. On one occasion he returned to the spot near Wynnewood where the check protector was hidden with a person other than Hair and filled out a check. After Calvin was placed in jail, the check protector was moved at his direction and Calvin furnished the automobile in which the articles were allegedly moved. The distinction between this case and the Price case is that here there was no receiving of stolen property. All the proof of the State showed Hair guilty as a principal in the original theft.

Over the objection and exception of the defendant the court gave the following instruction:

"To sustain a conviction for receiving stolen property, three things must be proven:

"First: That the goods were previously stolen by some other person.

"Second: That the accused bought or received them from some other person, or *aided in the concealment of them.*

"Third: That at the time he so bought or received them, or *aided in concealing them,* he knew that they had been stolen." (Italics supplied)

This instruction was erroneous. The statute under which the prosecution was instituted provides:

"Every person who buys or receives, in any manner, upon any consideration, any personal property of any value whatsoever, that has been stolen from any other, knowing the same to have been stolen, is punishable by imprisonment in the penitentiary not exceeding five years, or in the county jail not exceeding six months, or by a fine not exceeding two hundred and fifty dollars, or by both such fine and imprisonment." 21 O.S.1951 § 1713.

The Attorney General in his brief conceded that the trial court erred in the giving of this instruction by including the *underscored* words. There is no authority so far as we can find for instructing the jury that one could be convicted for receiving stolen property who aided in the concealment of the property. The insertion of this provision into the instruction would authorize the jury to convict on an element of the crime not set forth in the statute. In McGee v. State, supra, the three essential elements of the crime of receiving stolen property are stated as follows:

"Before there can be a conviction for receiving stolen property, it must be shown (1) that the property has been stolen by a person other than the one charged with receiving it; (2) that the one charged with receiving it actually received the stolen property; (3) that the receiver knew the property was stolen when he received it; guilty knowledge being an essential element of the offense."

The judgment and sentence of the District Court of Pontotoc County is re-

versed and remanded with the suggestion to the county attorney to institute a prosecution against Garland Hair for the original taking of the property. The element of corroboration of the accomplice will there be involved and such evidence might be difficult to obtain as it was in the instant case. Of course the question of the institution of such action is addressed to the sound judgment and discretion of the county attorney.

BRETT and POWELL, JJ., concur.