Hugh Donald WALLS, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15111.

Court of Criminal Appeals of Oklahoma.

Sept. 8, 1971.

Rehearing Denied Dec. 10, 1971.

Mac Oyler, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., John L. Clifton, Dist. Atty., Ronald R. Hudson, Asst. Dist. Atty., for defendant in error.

## OPINION

BRETT, Judge:

Plaintiff in error, Hugh Donald Wells, hereinafter referred to as defendant as he appeared in the trial court, was tried and convicted by a jury in the District Court of Pottawatomie County, Oklahoma, for the crime of "Knowingly Concealing Stolen Property, After Former Conviction of a Felony." Defendant's trial was conducted in a two-stage proceeding; he was first found guilty of Knowingly Concealing Stolen Property, after which the jury considered the After Former Conviction charge and returned a verdict sentencing defendant to serve ten (10) years under the direction and control of the State Department of Corrections.

The stolen property upon which this conviction is premised consisted of a General Electric Refrigerator, allegedly stolen from the kitchen of the Oakdale School, and found in the defendant's home. The facts of this case are complicated because of two prior illegal searches and seizures conducted by the law enforcement officials of Pottawatomie County. The first two searches were conducted under the authority of search warrants, which the State concedes were invalid.

The record reflects also that the refrigerator concerned in this matter was observed during one or both of the earlier searches of defendant's home; but it was not disturbed in either instance. The State Bureau of Investigation Agent admitted that he took the serial number of the G. E. Refrigerator, and inspected it generally, but otherwise the refrigerator was not disturbed. It appears that other allegedly stolen property was taken from defendant's home, but none of that is concerned in this particular appeal.

With reference to the two illegal searches, defendant asserts that the third warrant is contaminated by the two earlier searches, when the stolen refrigerator was first observed. In the second proposition of the State's brief, the illegality of the first two searches is conceded; but the State asserts that the "fruits of the poisonous tree" were sufficiently attenuated by new independent knowledge and information obtained prior to the third search and seizure.

The first illegal search occurred on February 28, 1968, when the Sheriff of Pottawatomie County, some of his deputies, Agents of the Oklahoma State Bureau of Investigation, and Agents of the Oklahoma Cattlemen's Association participated in the search. The second search warrant was issued on March 8, 1968. The same list of thirteen items attached to the first search warrant were attached also to the second one. The State sets forth that shortly before June 18, 1968, Mr. Jack Stowers provided information to the Sheriff of Pottawatomie County, and other law enforcement agents, concerning a burglary at the Oakdale Center School District in Noble County, Oklahoma. Stowers informed the authorities that he, and the defendant, broke into the school building sometime earlier and observed the G. E. Refrigerator. He also informed the officers that defendant later told him that he had the refrigerator. Armed with this information the law enforcement officers obtained the third search warrant on June 18, 1968, and proceeded to defendant's home and seized the stolen refrigerator.

Mr. and Mrs. Bill Feken, both of whom had been employees of the Oakdale School, testified and both identified the refrigera-

tor as being a General Electric, 12 foot, white refrigerator with a blue interior. They further testified that on August 31, 1967, it was learned that the refrigerator had been stolen from the school building.

Mr. John A. Mount, who had been the clerk for the school board for twelve years testified, and identified the G. E. Refrigerator as being the one which had been taken from the school building. He likewise identified it from the markings, color and from the glass shelf which had been specially made at his direction for that particular refrigerator.

Mr. Chester Stringer, Agent for the Oklahoma Bureau of Investigation, testified that he had been at defendant's home on several occasions, during the earlier illegal searches. He testified that he observed the refrigerator, examined it and wrote down the serial number which he observed on it. At the time of trial, the serial number of the refrigerator had been removed.

Mr. L. D. Watson, an Agent for the Oklahoma Cattlemen's Association, testified to essentially the same facts. Sheriff Hubert Stroud testified next, and his testimony pertained to the earlier illegal searches and to his returning later with the defendant, to his home. This trip was made while defendant was in custody and with defendant's permission.

The State's final witness was Jack Stowers, who lived at Choctaw, Oklahoma. He testified that he had known defendant for some ten years, and related how he and defendant broke into the Oakdale Center Schoolhouse in June of 1967; that the defendant inspected the refrigerator with the aid of a flashlight, and remarked that it was a good looking icebox and that he needed it. He testified further that some three or four weeks later the defendant told him that he had "got the refrigerator". Stowers testified that he requested defendant to give him his old icebox. Stowers also admitted that he had plead guilty to five charges in Pottawatomie County, and was awaiting imposition of judgment and sentence in those cases.

The District Attorney was called by the defendant as his only witness, and testified that he had engaged in plea bargaining with Stowers; and that he stated he would make certain recommendations to the Court when the time came for imposition of judgment and sentence in those cases; but made no promises beyond the limits of plea bargaining.

▆▆▆ Defendant's brief sets forth seven propositions of error, his first three propositions pertain to the two illegal search warrants and how they contaminated the third warrant. In his third proposition he asserts that the trial court committed error in overruling defendant's Motion to Quash. In this proposition defendant argues that because of the testimony of Jack Stowers, who asserted that defendant stole the property, the defendant could not be charged with concealing stolen property. In support of this proposition he offers the case of McGee v. State, 60 Okl.Cr. 436, 65 P.2d 207 (1937), which held that before a person can be guilty of *receiving stolen property*, the thief must have relinquished his possession of the property. That statement is quite correct concerning a charge of "Receiving Stolen Property"; however, in the instant case defendant is charged with the crime of "Knowingly Concealing Stolen Property, AFCF". Concerning that charge, the requirements of proof are: Defendant had knowledge that the property was stolen property; and, that he was in some manner concealing it from its rightful owner.

Insofar as the State concedes the invalidity of the first two search warrants, it is not necessary to discuss them, except as to how they might have affected the third warrant. Defendant contends that the evidence obtained as the result of the third search falls within the "fruits of the poisonous tree doctrine"; that the two illegal searches so contaminated the State's case, that any evidence obtained in the third search of defendant's home could not be used to prosecute him.

We do not accept defendant's contention. As the State points out in its brief, the nature of the fruit of the poisonous tree

doctrine has been discussed by the United States Supreme Court in the cases of Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); and Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); and Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We believe the State is correct when the brief asserts the Supreme Court summarized and clarified the rationale of that doctrine in *Wong Sun, supra,* when the following was stated:

"We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" At page 487 of 371 U.S. at page 417 of 83 S.Ct., at page 455 of 9 L.Ed.2d.

■ In the instant case, some three months after the second illegal search, separate and independent information was obtained by the law enforcement officers from Jack Stowers. This information was not the result of exploitation of the former illegal searches; and that information also gave sufficient attenuation to remove the third search warrant, from the fruits of the poisonous tree doctrine. The independent information provided by the police authorities, which was set forth in the affidavit for search warrant, was such that could be, and was subsequently proved at defendant's trial. We believe therefore that the evidence pertaining to the refrigerator in this case did not fall within the doctrine of the poisonous tree, and was admissible in evidence at this trial.

■ Concerning defendant's fourth proposition, in which he complains with reference to the District Attorney's opening remarks concerning the testimony of Jack Stowers, that testimony revealed that Stowers and the defendant did illegally enter the school building; and also, that defendant later told him he had taken the refrigerator in question. The District Attorney was discussing anticipated testimony which was subsequently proved. Nor do we accept defendant's other contentions in ·this proposition to be sufficient to disturb the verdict of the jury. We believe defendant's demurrer to the information was properly denied; as was his motion for mistrial premised upon the Sheriff's statement relating that while defendant was in custody and upon defendant's request he took the defendant to his home. We also believe defendant's demurrer to the evidence and motion to dismiss was properly denied. As we review the testimony, and as pointed out in the State's brief, witness Stowers merely related that the defendant told him that he had "got" the refrigerator. In a charge for concealing stolen property, it is not required that the information allege who stole the property. Likewise, we do not consider the statements of the District Attorney, at the commencement of his argument to the jury, to be a comment on defendant's failure to testify; and defendant's fifth proposition is denied.

■ We accept the State's position with reference to defendant's seventh proposition, that no evidence was offered to rebut the identity claimed by the State when the two copies of the judgment and sentence were offered into evidence to show defendant's former conviction in Cleveland County, Oklahoma; the first copy was identified by the deputy court clerk; and the second was a copy of the same instrument, but received from the State Penitentiary. Defendant's objection to the introduction of the instruments was premised upon the fact that the deputy court clerk did not personally know this defendant. Thereafter, the State introduced the copy of the judgment and sentence from the penitentiary, along with photographs of defendant, to prove he was one and the same person. The only objection offered to that evidence was that the records clerk was not there to identify

**324**

the same; however, they were sufficiently identified to serve the purpose for which they were offered. See: Jackson v. State, Okl.Cr., 308 P.2d 323 (1957); and Haughey v. State, Okl.Cr., 447 P.2d 1019 (1968).

■ Considering now defendant's sixth proposition, his objection to the instruction given for "Time Credits" is worthy. This Court held in Williams v. State, Okl.Cr., 461 P.2d 997 (1969), that while it is error to give the instruction on time credits, it is not reversible error; but the error is sufficient to modify the sentence imposed. Defendant's other complaints concerning the Court's instructions given during the first phase of trial are not well taken.

We are therefore of the opinion, after carefully considering the records and briefs before the Court, that the judgment and sentence in the District Court of Pottawatomie County, Oklahoma, case number 6683, should be modified and affirmed; and it is therefore ordered, that the sentence imposed herein should be, and the same is therefore, modified from ten (10) years imprisonment, to seven (7) years imprisonment; and as modified, the judgment and sentence is affirmed.