**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 22 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JAMES SURBER,

        Plaintiff-Appellant,

v.

GRAHAM ROBERTSON,
an individual,

        Defendant-Appellee.

No. 00-6411
(D.C. No. 99-CV-350-T)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **HENRY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant James Surber appeals from the district court's order granting summary judgment in favor of defendant Graham Robertson on Surber's civil rights complaint brought pursuant to 42 U.S.C. § 1983. We affirm.

Surber first met Michael Perry at an Oklahoma City bar called In Cahoots. Surber and Perry became regulars at In Cahoots, and frequently conversed there. Their relationship took an unusual turn when Surber, an employee of the Oklahoma County Sheriff's Department, was assigned to guard Perry at the Oklahoma County Jail.

Perry informed Surber that he was in custody for receiving stolen property. Perry served out his time and upon his release obtained employment with Gordy's Western Wear in Oklahoma City. Gordy's was conducting a liquidation sale. In September or October 1997, Perry met Surber and told him to come by Gordy's and pick out some boots. Perry told Surber he could get him an employee discount.

Surber went to Gordy's and picked out two pairs of boots. He gave Perry somewhere between $20 or $35 to hold the boots for him. The total price of both pairs was to be $75. Perry did not give Surber a receipt. However, he told Surber he would deliver the boots to him at In Cahoots.

Perry brought the boots to In Cahoots sometime after 8:00 p.m. It was dark outside. The boots were in the back of the Perry's pickup truck. Surber became

-2-

suspicious after he saw other pairs of boots in Perry's truck that looked brand new. Surber asked Perry about the boots, and Perry replied that they were his.

Surber asked Perry if the boots Perry was selling him were stolen.[1] Perry replied, "No. I wouldn't do that to you." Aplee. Supp. App. at 20. Surber took the boots and put one pair on and put the other pair in his truck. He did not pay the balance of the purchase price to Perry at that time. He did not receive a sales slip or receipt from Perry. Surber later went to Gordy's and paid Perry the balance of the purchase price; he thought it odd that Perry did not want to take the money at the cash register.

Sometime later, Surber was having his new boots shined by Janice Harvey (known as "J.J."), a shoeshine girl at In Cahoots, when he told J.J. about his purchase of the boots from Perry. J.J. became concerned, because she had done some shoe shining for Kevin Vavroch, the manager at Gordy's, and she thought the boots were worth far more than the $70 that Surber was paying Perry for them.

There is conflicting testimony about what happened next. Defendant Robertson, an Oklahoma City police detective, testified that J.J. told him that Surber only contacted Gordy's after she threatened to do so. Surber, however,

---

[1] Surber later testified he meant the comment as a joke. *See* Aplt. App., doc. 3, at 57.

says that he told J.J. something wasn't right about the sale from Perry and he asked her to call the police.

In any event, J.J. called Vavroch and reported Perry's sale of the boots to Surber. Surber later made arrangements with Vavroch to come to the store and to show him the boots. Surber had dirtied one of the pairs of boots walking in a field; he left these with J.J. to shine them. He brought the other pair of boots (the green and orange ones) to Vavroch, who informed him that they were stolen. Vavroch asked Surber to stay at the store and confront Perry.

Perry later came to the store where Vavroch and Surber were waiting for him. When he saw them, he said, "I guess y'all know everything." Aplee. Supp. App. at 17. Perry admitted that he and other Gordy's employees had been involved in stealing boots. Vavroch fired him.

Surber still liked the boots, so he made a deal with Vavroch to buy them from Gordy's, this time "over the counter." He went to work for Gordy's within a week after Perry was fired. Eventually, he paid for both pairs of boots through a payroll deduction.

In the meantime, Vavroch had reported the theft ring to Robertson. On October 21, 1997, Robertson interviewed Surber about his purchase of the boots. Robertson found it "startling" that Surber as a law enforcement officer admitted socializing with a convicted criminal and purchasing boots for $35 a pair from

-4-

someone whom he had previously supervised as a prisoner on a white collar crime case.  Aplt. App., doc. 3, at 63-64.

Robertson asked Surber whether he thought it was funny that the boots were so cheap.  Surber replied that was why he had contacted the police in the first place.  This explanation did not satisfy Robertson.  He prepared an affidavit to accompany a warrant for Surber's arrest for receiving stolen property.

Surber was arrested on November 25, 1997.  The Oklahoma County Sheriff's Office fired him the next day.  The Oklahoma County District Attorney's Office later dropped the charges against Surber, because Gordy's did not want to press charges.  [2]

Surber subsequently brought this action against Robertson, the Oklahoma County Board of County Commissioners, and the City of Oklahoma City.  He charged that the defendants had failed to conduct an adequate investigation before swearing out the arrest warrant, had denied him due process, had violated his right to privacy, and had wrongfully detained, arrested and seized him in violation of his constitutional rights.  [3]  After the City and County were dismissed, the district court granted summary judgment in favor of Robertson.

[2]    In an affidavit, Vavroch later stated that "It was with Mr. Surber's aid that I was able to stop the embezzlement of boots from Gordy's."  Aplt. App., doc. 2, at 33.

[3]    The complaint also contained state law causes of action for defamation and slander, which Surber subsequently withdrew.

"We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Hollins v. Delta Airlines*, 238 F.3d 1255, 1257 (10th Cir. 2001). Summary judgment is proper if the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) (quotation omitted).

Surber contends that the probable cause affidavit executed by Robertson for his arrest on the receipt of stolen property charge contained false information and omitted relevant facts. As a result, Surber argues, he was arrested in violation of his Fourth Amendment rights.

> It is a violation of the Fourth Amendment for an arrest warrant affiant to knowingly, or with reckless disregard for the truth, include false statements in the affidavit, or to knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause. . . . In a case involving information omitted from an affidavit, the existence of probable cause is determined by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.

*Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (citations and quotations omitted).

Surber contends that the arrest warrant affidavit omitted the following pertinent facts: (a) that Surber paid Gordy's in full for the boots; (b) that Gordy's was conducting a going out of business liquidation; (c) that Gordy's had hired Surber to work for them; (d) that since the boots were being liquidated, the price paid was reasonable; (e) the condition of the boots (damaged and green and orange); (f) Vavroch's belief that Surber was not involved in any wrongdoing; (g) that Surber acted quickly to have J.J. contact Gordy's regarding the boots; (h) that Perry and others had stated that Surber was not in any way involved with the illegal actions; and (i) that the embezzlement scheme would have gone undetected absent Surber's actions.

Oklahoma law defines the offense of receiving stolen property as follows:

> Every person who buys or receives, in any manner, upon any consideration, any personal property of any value whatsoever that has been stolen, embezzled, obtained by false pretense or robbery, knowing or having reasonable cause to believe the same to have been stolen, embezzled, obtained by false pretense, or robbery, or who conceals, withholds, or aids in concealing or withholding such property from the owner, is punishable by imprisonment in the penitentiary not to exceed five (5) years, or in the county jail not to exceed one (1) year, or by a fine not to exceed Five Hundred Dollars ($500.00) or by both such fine and imprisonment.

Okla. Stat. tit. 21, § 1713(1) (1983). [4]

---

[4] Section 1713 has subsequently been amended; the amendments, however, did not take effect until July 1, 1999, long after the search warrant affidavit was prepared in this case.

A separate section identifies a presumption that attaches when facts and circumstances suggest that the property has been stolen:

> Every person who, without making reasonable inquiry, buys, receives, conceals, withholds, or aids in concealing or withholding any property which has been stolen, embezzled, obtained by false pretense or robbery, or otherwise feloniously obtained, under such circumstances as should cause such person to make reasonable inquiry to ascertain that the person from whom such property was bought or received has the legal right to sell or deliver it shall be presumed to have bought or received such property knowing it to have been so stolen or wrongfully obtained. This presumption may, however, be rebutted by proof.

*Id.* § 1713(2).

Simply put, the elements of the offense of receiving stolen property are (1) that the property was in fact stolen and (2) that the accused bought or received the property, knowing it to be stolen. *Gentry v. State*, 562 P.2d 1170, 1174 (Okla. Crim. App. 1977). "The state is not required to prove that an accused had actual knowledge that the property was stolen; it is sufficient to prove that the accused had reasonable cause to believe the property was stolen." *Brooks v. State*, 714 P.2d 217, 219 (Okla. Crim. App. 1986). This offense definition makes it plain that some of the factual information Surber contends should have been contained in the affidavit had little or no bearing on the question of probable cause.

Given the statutory definition, the offense was complete, if at all, when Surber received the boots from Perry. That Surber later paid Gordy's for the

-8-

boots, and that Gordy's hired him to work for them, is irrelevant to the question of whether Surber knew (or, given the presumption, should have known) that the boots were stolen *when he received them* from Perry. In addition, as the district court noted, Surber fails to point to any evidence that Robertson knew that Gordy's had hired Surber when Robertson prepared the affidavit. Therefore, there is no showing that he knowingly or recklessly omitted this information from the affidavit.

Vavroch's opinion that Surber did not know the boots were stolen is more relevant to the issue of probable cause. As the district court noted, however, Robertson was privy to information concerning the facts and circumstances of Surber's receipt of the boots of which Vavroch was unaware. Surber fails to show that the omission of Vavroch's opinion constituted a knowing or reckless omission of facts relating to probable cause.

Similarly, Surber fails to show that the alleged omission of statements by Perry that Surber was "not involved" constituted a knowing or reckless omission of pertinent facts. Perry's statement, reported by Vavroch in his deposition, was simply that "Jimmy was not involved with it." Aplt. App., doc. 2, at 29. We are not told what "it" is. The fact that Surber was not an accomplice in the theft ring does not mean that he did not receive stolen property; the two crimes are separate and distinct. *See Hair v. State*, 294 P.2d 846, 849 (Okla. Crim. App. 1956);

-9-

*see also Lohman v. State*, 632 P.2d 430 (Okla. Crim. App. 1980) (noting general rule that receiver is not accomplice of the thief).

Moreover, on the receiving stolen property count, Surber fails to point us to any evidence that Perry denied the essential facts that led Robertson to suspect Surber: that Surber knew Perry when he was at the Oklahoma County Jail for receiving stolen property; that Perry told Surber that he could get him a good deal on the boots; that Perry gave Surber no official receipt for the purchase of the boots; that Perry did not take the money for the boots at the cash register; and that Perry delivered the boots to Surber out of a pickup truck at a bar at 8:00 in the evening. Therefore, on this record, Perry's opinion about Surber's non-involvement in receiving stolen property, if such an opinion were expressed, is just that: an opinion.

The fact that Surber caused the police to be contacted is relevant to his consciousness of guilt and therefore, indirectly, to the issue of whether he knowingly received the stolen property. Nevertheless, we cannot conclude that if the additional fact that Surber contacted the police and thereby caused the embezzlement ring to be exposed had been included in the affidavit, the warrant would thereby have lacked probable cause. It is uncontested that Surber did not contact the police, or have them contacted, until J.J. discussed with him the likelihood that the boots had been stolen.

Finally, the fact that the boots were ugly or in poor condition, or that they were being sold at a liquidation sale, was not a deliberate omission that would have vitiated probable cause had it been included in the affidavit. [5] Robertson testified that the price of the boots was only one factor that led him to believe that Surber had reason to know that the boots were stolen. "[P]robable cause does not demand the certainty we associate with formal trials." *Massachusetts v. Upton*, 466 U.S. 727, 734 (1984).

Even had the additional, relevant information he identifies been included in the affidavit, Surber fails to show that probable cause would have been lacking for issuance of the arrest warrant. The district court property granted summary judgment in favor of Robertson.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

Entered for the Court

---

[5] Surber makes much of the homeliness of the boots he selected. One pair had crepe soles with a green top and an orange foot. Vavroch described the green and orange pair, perhaps with some understatement, as "one of a kind, not really an appealing-to-the-masses type boot" and "not the most beautiful boot in the world." Aplt. App., doc. 2, at 28, 32. The other pair, manufactured by Rios of Mercedes, was sometimes referred to as a "duckbilled platypus boot" because of its flat shape with an ugly sole around the outside. *Id.* at 39. This pair was also damaged.

Stephen H. Anderson
Circuit Judge