RUSSELL BROWN v. STATE.

No. A-5696. Opinion Filed March 18, 1927.
(254 Pac. 113.)

See, also, 27 Okla. Cr. 206, 226 P. 1118.

T. H. Davidson and Claude Garrett, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, P. J. Appellant, Russell Brown, was tried in the court below on an information for the murder of Monroe Brown. The jury by their verdict found him guilty of manslaughter in the first degree, and assessed his punishment at confinement in the penitentiary for a term of 25 years. He has appealed from the judgment rendered upon such conviction.

The following brief statement of the facts and the evidence will be sufficient to make clear the contentions made:

The killing occurred at a dance near Boynton, December 11, 1920. The deceased, Monroe Brown, at the time he was shot, was leaving the dance in an automobile, belonging to, and driven by, Napoleon Lockridge, who testified:

"I have known Russell Brown about ten years, he is generally known by the name of 'Rabbit' Brown. I saw him at the dance at Spi Hawkins' place. When leaving there, as I started the car, Monroe Brown was sitting by my side. As the crowd came out of the house Rabbit Brown hollered, 'Stop.' a couple of times. Then three or four shots were fired. I saw the flash of the first shot. It was fired by Rabbit Brown, and Monroe Brown fell out of the car, and was lying under the fender. Rabbit Brown came up. He had a gun in his hand, a .45, and he emptied the cartridges out of the pistol."

Cecil McCauley testified:

"I was at the dance at Spi Hawkins Saturday night. I saw Napoleon Lockridge when he started to leave

the place that night in a touring car. I was standing off 8 or 10 feet from the car. I heard the shooting, and saw Monroe Brown crawling out from under the car like. He got up and said to Russell Brown: 'Rabbit, you shot me,' and Rabbit said, 'No, boy, I haven't shot you.' They commenced looking for the place he was shot, and Rabbit said, 'Boy, if I haven't shot you, I will.' Rabbit took the empty cartridges out of his pistol, and threw them on the ground."

Dr. O. H. Penny testified that he treated Monroe Brown after he was shot, and found that the bullet entered the shoulder and ranged down into the plueral cavity; that it was about a month from the time he was shot until the day he died, that the gunshot wound was the primary cause of his death, and tromatic pneumonia was the secondary cause.

Bert C. Hughes, deputy sheriff, testified that in June, 1923, he apprehended the defendant in Seminole county.

John Benton, deputy sheriff, testified that he went with L. A. Epperson, justice of the peace, now deceased, to the home of Monroe Brown the afternoon before he died the next day, and Monroe Brown said he was about to die, and that Rabbit Brown shot him.

As a witness in his own behalf appellant testified:

"Rabbit Brown is my nickname. I went to that dance at Spi Hawkins. I heard several shots out in the yard, but I did not shoot any that night while the party was going on. After the party broke up I walked out of the house and fired three shots in the ground. I did not shoot at or shoot Monroe Brown that night. I saw the crowd gather at the car. I walked up and pulled the cartridges out of my gun to show them the kind of a gun I was shooting. Monroe Brown said I had shot him, and I said, 'No, I did not.' I did not change my name when I went to Seminole county. I have been in jail now nearly 18 months."

On cross-examination he stated that he had served two terms in the penitentiary at McAlester, each for assault with intent to kill.

The defendant, the man he killed, and all of the witnesses who testified, except the two officers, were negroes.

It is contended that the court erred in overruling the defendant's motion to quash the information. The record shows that upon arraignment the defendant filed a motion to quash the information for reason in substance as follows: That said defendant never had a legal preliminary examination before a legal magistrate, nor did he waive a preliminary examination herein; that the justice of the peace before whom said defendant had a preliminary examination was without jurisdiction to act, and his purported order holding said defendant to answer to this court was and is illegal and void, and insufficient to confer jurisdiction upon this court.

The motion was not verified. It does not allege that the defendant is acting in good faith, and no proof was offered in support thereof. On the day it was filed the motion was overruled. The question argued is not presented by the record. The presumption is that a preliminary examination was duly had. It follows that the motion to quash was properly overruled.

It may be well for us to say here that it appears from the record that, after judgment was rendered, his counsel filed a motion to discharge the defendant on the same grounds set forth in the motion to quash and the additional ground that the court was without jurisdiction to pronounce judgment upon the verdict, for the reason that said verdict was for the crime of manslaughter in the first degree, and the prosecution herein was not commenced for more than three years after said crime was committed.

To sustain the motion the defendant introduced transcripts of two committing magistrates, showing thav said defendant in fact had two preliminary examinations, the first one before the judge of the municipal court of the city of Muskogee, and the second before a justice of the peace of Porter township, Muskogee county.

The question could not be raised in that manner or at that stage of the proceedings, however. In the case of Milam v. State, 24 Okla. Cr. 247, 218 P. 170, this court held that the municipal court of the city of Muskogee had jurisdiction to hold preliminary examination in felony cases.

The act creating the municipal court of the city of Muskogee did not disqualify the regularly elected and qualified justices of the peace of said county of their jurisdiction to sit as examining magistrates in felony cases.

The record shows that this action was commenced by the filing of a preliminary complaint before the judge of the municipal court of the city of Muskogee and the issuance of a warrant thereon in good faith, and this was done on the 20th day of June, 1923, and within three years after the death of deceased from a gunshot wound in January, 1921.

It follows from what has been said that there is no merit in the contention that this defendant was never accorded a preliminary examination. Assuming, but not deciding, that the three-year limitation applies in this case, there is no merit in the contention that the prosecution was not commenced within the three-year period. State v. Fulkerson, 16 Okla. Cr. 250, 182 P. 725; Davenport v. State, 20 Okla. Cr. 253, 202 P. 18.

A number of exceptions were taken to the rulings

of the court in giving and refusing instructions. After a careful examination, we reach the conclusion that, taken as a whole, the law of the case is fully and fairly presented in the instructions given.

We see no reason to doubt that this conviction was justified by the evidence, and that the verdict was as favorable to the defendant as the law and the testimony warranted.

We have examined the entire record with care, and, finding no error prejudicial to the defendant in it, the judgment of the lower court is accordingly affirmed.

EDWARDS and DAVENPORT, JJ., concur.