Henry B. CRUM, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13254.

Court of Criminal Appeals of Oklahoma.

March 20, 1963.

Rehearing Denied July 3, 1963.

O. B. Martin, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Henry B. Crum, hereinafter referred to as the defendant, was charged by Information in the District Court of Oklahoma County with the crime of Obtaining Money Under False Pretenses. He was tried before a jury, found guilty, and sentenced to Two Years in the Penitentiary, and to pay a fine of $500.00. He lodged his appeal in this Court asserting 3 assignments of error.

The defendant in this case was given a preliminary hearing and was bound over to District Court. When the Information was filed in District Court, defendant filed a transcript of the testimony taken at the preliminary hearing along with a Motion to Quash and Set Aside the Information upon the grounds that the testimony was insufficient to bind the defendant over to District Court and therefore nothing upon which to base an Information. It will be necessary to relate the testimony in substance in order to present the conclusion.

Defendant was charged with Obtaining Money Under False Pretenses, and at the

preliminary hearing it was shown by Mr. Renfro of the Capitol Hill State Bank that a cashiers check was issued to the defendant on October 29, 1960, in the amount of $100.00. That on December 6, 1960, defendant appeared at the bank and informed them the check had been lost. After defendant signed an affidavit to that effect and made an indemnity bond, he was issued a duplicate check in the same amount. Russel Moyer, charged with the defendant and an accomplice, testified the defendant approached him on February 23, 1961 with the cashiers check issued on October 29, 1960. They met at the Bedford Hotel and he endorsed defendant's name on the check in defendant's presence. Defendant called Davis & Irion Furniture Store, where he had an account and said he was sending a boy over to cash the check. That defendant waited across the street in his car while he went to cash the check. He said he paid the balance of defendant's account, $23.58, and returned with the money to defendant, who in turn gave the accomplice $25.00. He said he did not remember seeing the defendant before this date.

Nina Morris Neal testified she was the credit manager of Davis & Irion. That she first saw the check when it was returned from the bank. That she handled all collections and all forgeries and when this check was returned the second time, it came to her desk, she called defendant relative to the check and was informed the check was forged. She said her records revealed that at the time the check was cashed a payment was made on defendant's account of $23.58 and $76.42 was paid out in cash. She did not know who cashed the check.

This was the evidence presented to the examining magistrate. The defendant contended that the evidence was insufficient to bind the defendant over as the testimony of the accomplice was never corroborated. He was overruled and the defendant bound over to District Court.

When the Information was filed in District Court, defendant filed a Motion to Quash the Information on the grounds that the evidence taken at the preliminary hearing was insufficient to bind the defendant over and the evidence was insufficient upon which to base such Information. Defendant attached a transcript of the preliminary hearing in support of his motion. The trial court overruled the Motion to Quash and defendant saved his exceptions.

It is contended that Moyer was an accomplice and stood charged with the defendant. His testimony provided the only evidence connecting defendant with the commission of the offense. The other two witnesses' testimony was immaterial in that regard. Their testimony in no way connected the defendant with the crime but only to prove a crime was committed. It is to be readily observed from reading the transcript that the committing magistrate relied solely upon the uncorroborated testimony of an accomplice to justify his binding defendant over in District Court.

■ It is the contention of counsel that the defendant was held for trial in District Court without reasonable cause, since the testimony of the accomplice was uncorroborated; and that the following Statute applied:

> "A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstance thereof." Title 22 O.S.1961 § 742.

Numerous authorities support the contention that this Statute is applicable to preliminary hearings, such as Ex Parte Oxley, 38 Nev. 379, 149 P. 992; State v. Smith, 138 Ala. 111; 35 So. 42; Application of Hutchinson, 76 Nev. 478, 357 P.2d 589.

Although we are highly intrigued with the contention made by defendant, we are unable to consider the question on this appeal, because there was no attempt to comply with the Statute for such cases.

The method and procedure for setting aside an Information or Indictment is prescribed by Statute and is to be found in Title 22 O.S.A. § 494:

"To enable the defendant to make proof of the matter set up as grounds for setting aside the indictment, or information, the defendant may file his application before any court of record in the county, setting out and alleging that he is being proceeded against in a certain court, naming it, and setting out a copy of his motion *and alleging, all under oath, that he is acting in good faith,* and praying for an order to examine witnesses in support thereof."

In the case of Brown v. State, 36 Okl.Cr. 293, 254 P. 113, this Court said:

"Before a defendant is entitled to be heard in a proceeding to set aside an information, he must bring himself clearly within the provision of the statute. *A motion to set aside an information must be duly verified.*"

For a case directly in point see Thornton v. State, 49 Okl.Cr. 380, 293 P. 583, 295 P. 803; Id., 49 Okl.Cr. 243, 293 P. 585.

In the instant case, the Motion to Quash did not comply with the Statute in that it was not verified nor did it allege that defendant was in good faith. Therefore, we have no alternative but to hold it as not properly before the Court.

The defendant next contends that the trial court erred in permitting the County Attorney during the first trial to re-open his case for the purpose of putting on the stand a newly discovered witness. It appears that some testimony, adduced at the preliminary was used at the trial in District Court. When the State rested, defense counsel demurred to the testimony as being insufficient to establish a case against defendant because there was no corroboration of the accomplice connecting the defendant with the crime.

The following occurred:

"BY THE COURT: Well, of course, I don't know. If the check had been endorsed by Mr. Crum I think you would have something but there isn't any endorsement to that check. The only corroboration at all involved apparently, is the fact the check was actually made to Crum. In other words, it is his check.

"BY MR. BARTON: There is also testimony by Cashier, *Mr. Crum called them trying to get it cashed.*

"BY MR. MARTIN: That was Mr. Moyer's statement.

"BY THE COURT: Well, that was over the telephone. You didn't go into that as you should. If they knew his voice over the telephone. I think possibly they objected to it. What I can't understand is why you couldn't place him with this fellow as many conversations going on here about him being with him. I don't know I am about two thirds inclined to think he is guilty but what I think about it and the facts are. We don't really have enough here at this time to hold him under. You got anything you can place, evidently there is some connection with the other check, it is unexplained. The bank seems to have believed his story and paid this money back to him. The evidence shows they paid it back to him. And it is not his signature attached to the check. I don't mind going ahead and hearing the rest of the testimony but I don't know where it would do any good or not.

"BY MR. BARTON: If the court will hear the rest of the testimony we will put the other testimony.

"BY THE COURT: Well, if you have got it you ought to put it on now.

"BY MR. BARTON: All right, we move to reopen.

"BY THE COURT: I will let you reopen and put it on if you want to put it on. You have got to connect him with it somewhere. Mere fact that the check originates is issued to him isn't sufficient to connect him up to it. I realize that is a con game that

is pretty well followed and pretty hard to do sometimes but you got to raise the presumption that he knew about it. Now, if the bank hadn't paid him his money back and hadn't been his endorsement on it, I would say that you have got something according to testimony here. It is not according to testimony here. It is not his signature your testimony shows this fellow the accomplice signed it.

"BY MR. BARTON: We'd like to re-open and ask permission to endorse Mrs. Walker, Rebecca Walker. Counsel has talked to her and last night was first time we knew about her.

"BY MR. MARTIN: Are you calling a witness whose name is already endorsed on the Information? If so, we have no objection but to get a new witness we want to object to that, your Honor.

"BY THE COURT: Well, of course, the only thing I could do I could give you a mistrial or continue it. If you object to it. If they say they didn't know about her. If you can prove they did know about it, I won't let them put it on.

"BY MR. BARTON: I didn't know about it until yesterday.

"BY THE COURT: Put him on the stand and interrogate him about it.

"BY MR. MOUNGER: Take the stand."

It is to be noted that defendant made no objection to the witness even after the court had told him "he would give a mistrial or grant a continuance". After the defendant had interrogated the newly discovered witness in an attempt to show she was a surprise witness and the testimony revealed she had been interviewed by defense counsel prior to trial; the following proceeding was had:

"BY THE COURT: I think you placed yourself within the rule that provides that she could because you had the opportunity there if you knew she might be called you had opportunity to ask her then. You could go ahead and dig into it. She said she might be called so that puts it in this relation, if they want to endorse her on there now, I will have to let them. But if you are surprised about the fact that she is going to testify, which I doubt if you are, I I would have to give you some time to get around it, if you could. She told you she hadn't been talked to about being a witness here.

"BY MR. MARTIN: Our point, if your Honor please, County Attorney or rather Deputy Sheriff knew.

"BY THE COURT: Apparently the Deputy Sheriff doesn't have anything particular to do with fact Mr. Crum knew she was going to be called as witness, wouldn't have anything to do with it but if you know it then you are not surprised she might be a witness. That is the reason of the rule.

"BY MR. MARTIN: She told me.

"BY THE COURT: You are not going to be surprised if you already know about witness. That is large eight ball you get behind once in while but that is the law.

"BY MR. MARTIN: I don't think she or I or Mr. Crum actually knew at six o'clock. She said she might be.

"BY THE COURT: Then it was your duty to find out then what she knew and if you didn't do it you are faced with the situation that he has got a right to endorse her but you still have the right to take a continuance, if you want to.

"BY MR. MARTIN: At this time we want to make a formal objection to her name being endorsed as witness to testify in case as evidence in chief.

"BY THE COURT: I don't know whether she can or not. She might not.

"BY MR. MARTIN: I mean testify in chief.

"BY THE COURT: Well, I am going to let them endorse her name. Let the record show her name endorsed, and if you want to object to it, and if you want a continuance why we will grant it.

"BY MR. MARTIN: We will not ask for a continuance, your honor.

"BY THE COURT: Let the record so show. You want to say anything else?"

It is obvious that defendant refused the offer of the trial court to grant a continuance because the witness had not been endorsed on the Information and also refused the trial court's offer to grant a mistrial. He therefore waived his right to claim the court's action as error.

The cases of this Court are uniform in holding that permitting the case to be reopened for additional testimony is discretionary with the trial court and unless a clear abuse of such discretion appears, no question is presented for appeal. See Winfield v. State, 18 Okl.Cr. 257, 191 P. 609.

When defendant fails to object and refuses a continuance or mistrial he cannot be heard to complain on appeal.

Defendant next contends that the evidence adduced at the trial failed to sufficiently corroborate the testimony of the accomplice and therefore the trial court should have sustained the demurrer. Mrs. Rebecca Walker, the witness that the state relied upon to support the testimony of the accomplice was in substance as follows:

"That she was employed by the Times General Publishing Company. That she knew both defendants, that in the town of Blanchard in August of 1961, she overheard a conversation between the defendant and accomplice Moyer.

"BY MR. MOUNGER:

"Q. Now at the time and place we talked about, month of August, last year at town of Blanchard, Oklahoma, were you present when conversation took place between Crum and Moyers?

"A. Yes.

"Q. What was the conversation between those two people that you heard?

"A. Mr. Crum asked Mr. Moyer would he step outside he thought he had some kind of idea they could work something out to keep them from going to prison.

"Q. I believe you testified, did you live out there with Mr. & Mrs. Crum?

"A. I moved in out at Mrs. Crum's in August, 1960. She and Henry were married in October and they left last of November, 1961.

"Q. After they married, Mr. and Mrs. Crum, you say in 1960?

"A. Yes, in October.

"Q. In October.

"A. Yes.

"Q. Did you or did you not see this witness Moyer, did Mr. Moyer and Mr. Crum visit?

"A. Mr. Moyer visited there, yes.

"Q. With Mr. Crum?

"A. Yes, Mr. Crum.

"Q. Were you present when preliminary was held in Justice Court?

"A. Yes.

"Q. You know what Judge this was before?

"A. It seems to me it was Cavnar, something like that.

"Q. It was the preliminary of this case?

"A. Yes.

"Q. Now did you talk with Mr. Crum at that time?

"A. Yes, I came with Mr. & Mrs. Crum that morning.

"Q. What did Mr. Crum tell you on that morning with reference to witness Moyer, if anything?

"Q. He wished he had never gotten mixed up with Russell and gone through with deal."

■ With this the State again rested and the defense counsel rested without putting on any testimony. The Court is of the opinion that the evidence of Rebecca Walker was sufficient to permit the case to go to the jury. This Court held in the case of Davis v. State, 18 Okl.Cr. 453, 196 P. 146, that:

"It is not essential that evidence corroborating an accomplice shall cover every material point testified to by the accomplice, or be sufficient alone to warrant a verdict of guilty, and if the accomplice is corroborated as to some material fact by independent evidence tending to connect defendant with the crime, the jury may from that infer that he speaks the truth as to all, but such corroborating evidence must show more than the mere commission of the offense or circumstance thereof, in view of this section."

Also, see Mitchel v. State, 59 Okl.Cr. 393, 60 P.2d 627.

■ Under the rule laid down above, the corroborating testimony, though weak, was sufficient to withstand the demurrer. The Court is of the opinion that the evidence in this case presents a close question of law and if defense counsel had properly availed himself of the statutory procedure, a serious question would have been presented as to the Motion to Quash the Information.

This Court does not place the stamp of approval on surprise witnesses being sprung on the last day of trial, but again the defense did not avail themselves of the remedies of the court, to wit: A mis-trial or a continuance.

■ We feel that in view of the circumstances, that justice would be better served if the judgment and sentence of the trial court was reduced from Two Years to One Year in the Oklahoma State Penitentiary, and to pay a fine of $500.00. With the sentence modified as stated, the case is otherwise Affirmed.

BUSSEY, P. J., and JOHNSON, J., concur.