MAX MOULTON v. STATE.

No. A-10944.   Dec. 22, 1948.

(201 P. 2d 268.)

Pierce & Pierce and A. L. Brook, all of Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. The defendant Max Moulton was charged jointly with Dale King with the crime of murder of Carl Bailey Lashley in Muskogee county, Oklahoma. A severance was taken, and Dale King was tried and convicted of first degree manslaughter and sentenced to four years in the penitentiary. The defendant Max Moulton was tried and convicted of first degree manslaughter and likewise sentenced to serve four years in the penitentiary, and he has appealed.

The defendant sets forth several assignments of error, but we shall consider only one which we have concluded decisive of the issues herein involved. This assignment is that the verdict of the jury is contrary to both the law and the evidence.

The record discloses that on or about December 27, 1946, the defendant Max Moulton was operating the Willie Belle Cafe, a small establishment, located on South Main in Muskogee, Oklahoma. That he had in his employ one Dale King as night proprietor who worked from 6:00 p.m. to 6:00 a.m., and who was on duty on the night of this killing. It further appears it had been the habit of Max Moulton to keep a .38 caliber pistol on the refrigerator in the back of the cafe, as protection against robberies. Moulton also kept a black jack under the counter below the cash register. It conclusively appears that unknown to Moulton, Dale King had been in the habit of carrying the pistol in his shirt front as he was doing on the night of December 27, 1946. It appears further that Max Moulton had come into the cafe about 20 minutes before the killing, just after midnight, to check the cash register before retiring for the night. He had just finished checking the cash register when the fatal altercation herein involved commenced. The record shows that about that time, the deceased Carl Bailey Lashley, Gertrude Smithson, Juanita Swaggerty, Juanita Cranford and Kermit Smithson came into the Willie Belle Cafe. These parties it appears had been on an all-day and evening whisky drinking round at various beer establishments and honkey tonks including the Falstaff Bar, the Roxy Bar and Mac's Place and elsewhere. By the time these parties arrived at Moulton's place they were all inebriated and the Swaggerty woman was drunk to the

point of being ready to pass out. The deceased Carl Bailey Lashley, the record discloses, was also drunk. The Swaggerty woman sat down on one of the stools along the back end of the place and laid her head on the counter. The Smithson girl was slapping her about the head in an effort to sober her up. Max Moulton observed this and told them they would have to leave in order to avoid his being embarrassed with the police. He threatened to call his wife and have her put the Swaggerty woman out. Instead, he called on Judy Payne, a waitress in his place, to put her out. Judy Payne undertook so to do, and the Smithson woman intervened. It looked as though a fight between the women was about to ensue, and the deceased Carl Bailey Lashley stepped in saying "I will do the girl's fighting", and at this time the record shows the defendant was behind the counter, up front near the cash register. Dale King was standing in the opening between the front and back counter near the middle of the room. Lashley started toward the back and met King, and to whom King said " I would not do that if I were you", and Lashley replied "I had just as soon whip you as anybody", and the fight between King and Lashley was on. Lashley knocked King down and got on top of him and was beating him with his fists. The record is in conflict as to the part Moulton played at this time, but at the worst for him, it appears that he may have struck at Lashley over the counter with a black jack which he had procured from underneath the cash register. The record in this regard shows some of the witnesses testified he struck him two or three times, all of which he denies and in which denial, some of the witnesses corroborate him. It is conclusively clear, however, that at this point the defendant withdrew from the fight and left its outcome to King. King kicked Lash-

ley off of him into a juke box where Lashley's head hit on a sharp corner and cut a gash just back of his left ear. It further appears that King's pistol dropped out of his shirt on to the floor. That he picked it up and got to his feet and as he did so that Lashley rushed him and was met by King, discharging the pistol into Lashley's temple resulting in his death. There is not a scintilla of evidence to show that defendant knew that King had the pistol but to the contrary the evidence is conclusive that he did not know it. The record is also clear that he did not participate in, advise or encourage, or intend that King should kill Lashley. The record further shows Moulton never came out from behind the counter, had withdrawn from the fight, and was standing behind the cash register when the shooting took place. In fact, the record shows as soon as the shot was fired defendant asked King "Dale, why did you do it?" Moreover, conceding the defendant struck at the deceased, as some of the witnesses say he did, and hit him, he apparently did not hit the deceased with such force as could have resulted fatally. This fact is revealed by the testimony of Don Petering, the undertaker. He said that there were no bruises on Lashley's head or body except the gash behind his ear and the gunshot wound in his temple. It is therefore apparent under these conditions, even conceding that the defendant struck the deceased, the blows were not such as could have resulted in death. The state does not contend that the blows did, or even contributed thereto. Moreover, there is not the slightest claim of a conspiracy on the part of King and Moulton to effect the death of Lashley. This is a substantial statement of the record. Under this state of the record the defendant could not be held for manslaughter in any degree for he was not a principal to the homicide.

The defendant was charged under the provisions of Title 21 O.S.A. 1941 § 172, which reads as follows:

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

Scott v. State, 13 Okla. Cr. 225, 163 P. 553, is a case in point. Therein this court said:

"Proof that one defendant committed an assault with a dangerous weapon, and that the assault so made and the injury resulting was not and could not have been fatal, and, further, that another defendant, with a different weapon, committed the homicide charged, will not support a conviction for murder or manslaughter against the first person, unless the proof further shows that there was a conspiracy between the parties to perpetrate the homicide, or that the first person aided, abetted, assisted, encouraged, or counseled the party who fired the fatal shot."

It is true this record may have supported a charge or conviction of assault and battery but as this record shows such assault and battery could not have been fatal. As we said in the Scott case, supra, where the person committing the assault even with a dangerous weapon had withdrawn from the affray before the homicide, such facts would not support a charge of murder or manslaughter committed by another assailant without an agreement or conspiracy between the parties to commit the homicide. Anderson v. State, 66 Okla. Cr. 291, 91 P. 2d 794, is a case construing the foregoing statute, wherein it was said:

"* * * Under the above statute, to be concerned in the commission of crime as a principal, one must either commit the crime himself, or procure it to be done,

or aid or assist, abet, advise, or encourage its commission. A mere mental assent to or acquiescence in the commission of a crime by one who did not procure or advise its perpetration, who takes no part therein, gives no counsel and utters no word or encouragement to the perpetrator, however wrong morally, does not in law constitutes such person a participant in the crime."

See, also, Hubbard v. State, 71 Okla. Cr. 373, 112 P. 2d 174, to the same effect. See, also, Moore v. State, 4 Okla. Cr. 212, 111 P. 822, citing numerous authorities in support of this rule. The defendant took no part in the homicide, did not assent or aid in its commission, advise, encourage or procure its commission. Furthermore, the record shows he did not even assent to or acquiesce in its commission. It merely shows that he was present at the time of the homicide, when without his knowledge Dale King produced the pistol and killed Lashley. It has been held "it is not sufficent to show that the defendant was present, and knew the offense was being committed. The proof must go further, and show, beyond a reasonable doubt, that he was participating in the homicide before or at the time of its commission". Drury v. Territory, 9 Okla. 398, 60 P. 101, 107.

In Crabtree v. State, 18 Okla. Cr. 125, 193 P. 1005, it was laid down as a general proposition:

"It may be stated, as a general proposition, that no one can be properly convicted of a crime that he did not commit, or to the commission of which he has never expressly or impliedly given his assent."

To hold this defendant for manslaughter in any degree on this record would do violence to the rule announced in Crabtree v. State, supra. In view of the foregoing conclusions there can be no doubt that the defendant did not commit this crime and that he did not, ex-

pressly or impliedly, assent thereto and, therefore, he could not be a principal.

In view of the fact that the record further discloses that the defendant had been convicted by court martial in 1918 for uttering remarks against the government for which he was sentenced to five years in the penitentiary, and that he was convicted in 1920 for robbery for which he was sentenced to one year in the penitentiary, and that in 1930 he was convicted of forgery and sentenced to two years in the penitentiary, and that he was convicted of lesser offenses, we can but conclude that the verdict of the jury was based upon passion and prejudice due to the defendant's unsavory prior record. In Hubbard v. State, supra [71 Okla. Cr. 373, 112 P. 2d 174], this court said:

"While it is well settled that this court will not reverse a conviction for insufficiency of the evidence, if there is any substantial evidence, although circumstantial, from which a reasonable and logical inference of guilt arises, the converse rule is also well settled that, it is not only the province but the duty of the court to set aside such a verdict when it is contrary to law and the evidence, or where there is no evidence to support it, or there is a failure to prove some essential matter to establish the offense charged, or where it appears that the verdict was rendered as a result of passion or prejudice. The performance of this duty on the part of the court is the exercise of legal discretion and judgment as to the sufficiency of the evidence to overcome the legal presumption of innocence to which every one is entitled who is put on trial for an offense."

For all of the reasons above stated the judgment and sentence herein involved is hereby reversed, with instructions to the county attorney that unless he has additional

evidence sufficient to convict the defendant and to hold him for further trial, it is ordered by the court that he be discharged.

BAREFOOT, P. J., and JONES, J., concur.