**William Eugene DAVIS, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–13586.**

Court of Criminal Appeals of Oklahoma.

April 27, 1966.

Benjamin E. Stockwell, Norman, Dick Jones and Charles Jones, Oklahoma City, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal from a conviction for the crime of grand larceny, in the district court of Cleveland County, Oklahoma.

Plaintiff in error was tried before a jury, convicted, and sentenced to serve five years in the state penitentiary. His motion for new trial was overruled, and he has perfected his appeal to this Court. Hereafter, plaintiff in error will be referred to as defendant, as he appeared in the district court.

Defendant cites thirteen assignments of error in his petition. In his brief he treats those assignments under two general propositions, while discussing six specific errors.

The first proposition stated is: "The defendant was denied a fair and impartial trial because of improper and prejudicial misconduct of the county attorney"; and the second is stated as: "Error of the court in permitting the introduction of incompetent, irrelevant, immaterial and improper evidence which was materially and fundamentally prejudicial to the rights of defendant."

The Attorney General's brief provides his answers to the six specific errors, to which defendant filed a reply brief. In his reply brief, defendant argues the violation of defendant's fundamental and constitutional rights.

We have considered the record, and the briefs of both sides most carefully, and choose to discuss only those matters most affecting the rights of this defendant, which might be prejudicial.

Defendant cites Art. II, § 6 of the Oklahoma State Constitution, which provides, among other things, that every man shall have a fair trial, without prejudice. Art. II, § 7 provides that "No person shall be deprived of life, liberty, or property, without due process of law." Included in the phrase "due process of law", are the elements of fairness and impartiality.

"Due process of law is * * * intended to protect the citizen against arbitrary action and to secure to all persons equal and impartial justice." In re Lutker, Okl.Cr., 274 P.2d 786.

In substance, these provisions are intended to assure that every man charged with the commission of a crime shall be provided a fair and impartial trial, in accordance with proper judicial procedure. This Court has held many times that regardless of the apparent guilt of the accused, he is entitled to stand trial based entirely upon the facts, fairly and impartially presented, and as borne out by the evidence. It is the duty of the courts to see that the guaranty of such fair and impartial trial shall be upheld.

We believe, in this case, the defendant did not receive a trial entirely without prejudice. We do not say the prejudice was intentional, but whether intentional or not, it is present in the record before this Court.

When the county attorney was permitted to go into collateral matters concerning certain bank deposits, which he contended were made by the defendant, without offering any proof of his contentions, he left insinuations and implications with the jury that the funds deposited were illegally acquired.

We observe also, that as the county attorney continued to dwell on those deposits, defendant finally said, " * * * This money that you're adding up here, all these deposits, you didn't substract a cent one for groceries or anything else, that's just total deposits."

As we review the record, the defendant was correct in his statement. From the record, we assume the county attorney was attempting to reflect the total deposits, in comparison with the apparent source therefor.

■ However, notwithstanding the fact that the prosecution has great latitude in cross-examination, there are limits to which it is permitted to go. And, when it clearly appears that the questions asked create undue prejudice in the minds of the jury, whether intentional or not, then the cross-examination has exceeded the limits of proper cross-examination. This is particularly true when no proof appears in the record to support the nature of the cross-examination.

■ During the county attorney's cross-examination of the defendant, defendant denied certain alleged deposits. At no time did the county attorney offer any proof to overcome defendant's denials. The county attorney was therefore bound to accept defendant's statements as being true. As stated in Wharton's Criminal Evidence, 12th Edition, Volume 3, § 860:

"If the matter is irrelevant or collateral, the witness' answer is conclusive upon the party examining him, even though the question is asked for impeachment purposes or to show bad character of the witness."

A subsequent paragraph, § 886, in Wharton's Criminal Evidence, supra, states further, with reference to "Conclusiveness of Answers":

"The rule relating to the conclusiveness of answers given on cross-examination to questions on collateral matters *is applied to the answers of the defendant the same as in the case of the ordinary witness.* Thus, while the cross-examination, subject to the discretion of the court, may go into collateral matters when the purpose is impeachment of the witness, *the answers of the defendant to such questions is conclusive.*" (Emphasis added.)

■ Nonetheless, the county attorney continued to pursue the matter of deposits, when in his closing argument he said: "I'd like to review some other things, the defendant * * * a workingman, made $21,000 deposits in two years in a bank and a man who works for wages can't remember $3,000 worth of deposits." Defendant cites this comment as one being prejudicial to his fundamental rights. The attorney general counters, in his brief, that the defendant waived any contention of error when the objection was not made at the time of the closing argument.

■ We are of the opinion that the county attorney's remarks were prejudicial to defendant's fundamental rights, and therefore failure to object did not waive the objection. During cross-examination, defendant did offer explanations of certain deposits, and denied others; but the county attorney would accept neither his explanation nor his denials, which he was bound to do. We observe from the record also that on re-direct, defendant offered to permit the county attorney to examine his bank records, which offer was not accepted. Instead, the county attorney continued to invoke his own method of calculation, which we are unable to follow.

Referring to the cross-examination of the defendant, the attorney general states in his brief, " * * * that the defendant had earlier on direct examination testified about saving money to buy his farm near Prague, about his and his wife's employment, and about the actual buying of the farm in December, 1962. Presumably the purpose of this testimony about defendant's financial condition introduced by the defense was to show the improbability

that he would commit a crime for financial gain. It, therefore, was a proper subject for inquiry by the prosecution on cross-examination." He then cites from 3 Wharton's Criminal Evidence, (12th Edition) § 858 at page 235:

"A full cross-examination of a witness upon the subject of his examination in chief is the absolute right, not the mere privilege, of the party against whom he is called * * *."

We do not deny the correctness of this statement. However, we submit that this paragraph is the opening one of the section titled, "Cross Examination"; "A, Existence and Extent of Right;" "§ 858. Right to cross-examine witness of adverse party."

This paragraph is subsequently qualified by those following and explaining the general statement. Among those are the paragraphs quoted hereinbefore.

■ This Court held in Leeth v. State, 94 Okl.Cr. 61, 230 P.2d 942:

"It [is] improper for the county attorney to state his personal opinion as to the defendant's guilt *or to state facts not proved by evidence or otherwise given before the jury, and which amounts to his own opinion.*" (Emphasis added.)

As stated hereinbefore, the only evidence offered in this respect was that provided by the county attorney in the process of his cross-examination, which in substance amounted to his opinion.

■ We also consider the procedure followed by the county attorney, in his cross-examination of the Prague Chief of Police, to have violated defendant's fundamental rights. The insinuations, and inferences suggested by the cross-examination could have had no other effect than to prejudice the minds of the jury. And, notwithstanding the court's admonition to the jury, such did not remove the prejudice already caused.

The record reveals that at the time the crime, for which this defendant was standing trial, was committed he was a policeman in the city of Prague, Oklahoma. He was arrested in Prague, and was returned to Norman to stand trial. Defendant called the Prague Chief of Police to testify as a witness. In his direct testimony he stated that the defendant performed his job well. During his cross-examination, the county attorney proceeded as follows: "Did you have any burglaries in Prague before this defendant came over there?", to which defense counsel objected. Outside the hearing of the jury the county attorney made the following record:

"The State would prove by this testimony that prior to the time the defendant went to work for the Prague Police Department there were relatively few burglaries and none of any magnitude, but that shortly after the defendant went to work for the Prague Police Department they had the largest burglary committed in recent history of Prague, Oklahoma."

The trial judge asked, "Just one burglary?", to which the prosecutor answered, "Well, I know of one and I would like to ask him about others. The State would establish that the crime rate increased in Prague, Oklahoma, after Davis went to work over there." The Judge responded, "I don't believe that would be admissible."

The county attorney continued his cross-examination, during which he asked, "You said the defendant, Davis, did a good job, is that correct?", to which an affirmative answer was given. "What do you mean by that?", asked the county attorney. "Taking well care of his job", replied the Chief. "Taking well care of his job?", asked the county attorney again. "Yes, sir" replied the Chief. "What do you mean by that, sir?", continued the prosecutor. "Well, for instance, we go out to do our job, don't we do it well", explained the witness. "You mean he reported for work on time?", queried the attorney. "Yes, sir". "You mean he wasn't drunk on the job?" "No sir, not that I ever seen, no sir", replied the witness. "You mean that

he made several arrests?", continued the county attorney. "Yes sir", the Chief answered. "Do you mean he stopped major crime in Prague?", pressed the county attorney.

At this point the defense counsel offered the following objection: "If the court please, that presumes there may have been a major crime in Prague, object to the form of the question." "Overruled", replied the judge, "the witness still hasn't defined very well what he means by a good job."

"Do you mean that he stopped major crime in Prague?", continued the county attorney: The chief answered, "I didn't say he stopped major crimes, I say he helped." And then the county attorney proceeded to cast the prejudicial "poison dart" by asking the witness, "You say he helped. Now isn't this true, Chief, that before Davis came to work the Prague Police Department, there were relatively little crime in Prague?" "Possibly", answered the Chief. "And isn't it true", continued the county attorney, "that the major hardware, implement company—strike that. Was there a major burglary after Davis came to work for the Prague Police Department?" Before the witness could answer, the defense counsel entered his objection, to which the judge made the following remark: "The objection will be overruled, but the jury is admonished that this is not being admitted as evidence against the defendant but only as cross-examination of this witness."

In defense of this part of the trial, the attorney general recites the following in his brief:

"It is obvious from a reading of the entire record on this matter that the county attorney was testing the credibility of the witness, especially as to that part of the witness' testimony on direct examination to the effect that the defendant did a good job and was reliable and dependable as a police officer. The fact that there was a major unsolved burglary in Prague during the defendant's tenure there on the police force at least tends to rebut the witness's testimony that the defendant did a good job as a police officer."

If this line of reasoning was true, then most policemen throughout the country would be subject to criticism, because crimes are committed during their tenure in office. It is true that part of a policeman's job is to prevent the commission of crimes; but, it is not always possible for him to do so. That failure does not always result from the policeman's negligence, or his failure to perform his assigned task well; but more frequently is due to circumstances beyond his control.

We are of the opinion that it is reversible error for the trial court to permit the prosecution to continue to ask prejudicial questions concerning matters completely foreign to the charge for which the defendant is standing trial. The nature of his cross-examination was based upon conjecture, which was incapable of proof, at the time of this trial at least, and was stated in such a manner as to be prejudicial to the defendant. We fail to see how this line of questions,—without competent evidence—could prove, or disprove the charges for which defendant was standing trial. We can see, however, how they could, and no doubt did, prejudice the minds of the jury against this defendant.

The county attorney said, in his closing argument, "In this particular case, as the Judge has mentioned to you, the State bases its case in a great part on circumstantial evidence. * * *." With the county attorney's admission before us, the question which therefore confronts this Court might be stated: in the absence of the insinuations and implications placed before the jury by the county attorney, is the circumstantial evidence sufficient to sustain the jury's verdict? Under these circumstances we are unable to provide a satisfactory answer.

This Court recited in Moulton v. State, 88 Okl.Cr. 184, p. 191, 201 P.2d 268, p. 272:

"While it is well settled that this court will not reverse a conviction for insufficiency of the evidence, if there is any substantial evidence, although circumstantial, from which a reasonable and logical inference of guilt arises, the converse rule is also well settled that, it is not only the province but the duty of the court to set aside such a verdict when it is contrary to law and the evidence, or where there is no evidence to support it, or there is a failure to prove some essential matter to establish the offense charged, or *where it appears that the verdict was rendered as a result of passion or prejudice.*" (Emphasis added.)

The fact that the evidence was largely circumstantial, which, coupled with the unsubstantiated insinuations and implications placed before the jury, must have caused suspicion and prejudice in the minds of the jury.

▇▇▇ In Neely v. State, 60 Okl.Cr. 99, 61 P.2d 741, which is also cited in Kizer v. State, 67 Okl.Cr. 16, 93 P.2d 58, the following was said:

"The repeated asking of incompetent questions, which clearly have for their purpose the intimation of something to the jury that is either not true or not capable of being proven if true, is wrong, and such conduct of counsel is not cured because the court sustains the objections to the questions."

▇▇▇ It was never contended by the county attorney that he could prove who committed the burglaries in Prague, Oklahoma; nor was there any evidence offered to show when, or under what circumstances they were committed, except that they were committed while the defendant was a policeman there. We must therefore conclude that the line of questions asked by the county attorney, being foreign to the matter at hand, were improper. This is true, notwithstanding their being asked on cross-examination. There is little doubt too, that they prejudiced this defendant in the eyes of the jury.

This Court said, in the body of the Kizer opinion, supra:

"* * * and the action of the county attorney in asking questions tending to discredit, bias, and prejudice the defendant's rights before the jury when he had no proof to show the facts inquired about were true in the event the defendant denied them, clearly show that the defendant Joe Kizer was denied that fair and impartial trial guaranteed to him by the Constitution of the United States, U.S.C.A.Const. Amend. 6, the State of Oklahoma, Okl.St.Ann.Const. art. 2, § 20, and its laws * * *".

Under the circumstances of this trial, we are of the opinion that the same must be said concerning this defendant's trial.

24A C.J.S. Criminal Law § 1908(3), p. 1058, reads as follows:

"The admission of incompetent testimony or evidence for the purpose of impeaching or discrediting the testimony of a material witness for accused, or for impeaching or discrediting the testimony of accused, where he takes the stand in his own defense, will, in general, be ground for reversal, especially where the evidence is conflicting on the matters testified to by the witness whom it is sought to impeach, and an instruction to the jury may be held inadequate to cure the error."

The fourth paragraph of the syllabus of the case, United States v. Gruber, 123 F.2d 307, recites:

"Under some circumstances, it is prejudicial error in cross-examination of accused's character witness to suggest reports of commission of crimes not within scope of indictment, notwithstanding witness denies he has heard rumors suggested."

Certainly, the Prague burglaries were not within the scope of the information filed against this defendant.

Counsel for both sides of this case have provided numerous citations, to support their positions. These have been reviewed. However, we can only come to the conclusion that the prejudicial nature of the conduct of this trial sufficiently prejudiced the defendant's rights before the jury to preclude him from receiving a completely fair and impartial trial.

We consider it unnecessary to discuss the other aspects of the trial at this time; and, for the reasons stated herein, we must therefore reverse and remand this case for a new trial.

Therefore, this case is reversed and remanded to the district court of Cleveland County, for the purpose of granting the defendant herein a new trial.

NIX, J., concurs.

BUSSEY, P. J., not participating.