Ronald Curtis POWELL, Plaintiff in Error,

v.

The STATE of Oklahoma, Defend-
ant in Error.

No. A–15323.

Court of Criminal Appeals of Oklahoma.

Dec. 16, 1970.

Rehearing Denied Jan. 8, 1971.

Bruce W. Gambill, Pawhuska, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Max A. Martin, Asst. Atty. Gen., for defendant in error.

BRETT, Presiding Judge:

Plaintiff in Error, hereinafter referred to as defendant, was charged by Information in Osage County with the crime of Robbery With Firearms, After Former Conviction of a Felony. After the preliminary hearing defendant was bound over for trial in the district court, tried by a jury, convicted and sentenced in accordance with the jury's verdict to twelve (12) years in the state penitentiary.

The facts in the case are substantially as follows: After dark on the 14th day of March, 1969, an automobile containing a driver and one passenger pulled into the Sav-More Service Station, just outside the city of Pawhuska in Osage County. The driver of the car was later identified as Edward Eugene Murphy, co-defendant of Powell. Murphy later entered a plea of guilty to the charge of Armed Robbery. Murphy told the lone attendant, Donald Ray Pippin, to give them one dollar's worth of gasoline, and further instructed Pippin to put in a quart of oil. When Pippin went into the station office to get the oil, he observed both men. The two occupants of the car had already left the automobile and had gone into the business office of the station. When Mr. Pippin again entered the office, Murphy was holding a gun pointing at him; Murphy instructed Pippin to give them all of the money in the station. Pippin took the bills, in the amount of $196.00, which he had previously folded and placed into his jacket pocket, and handed them to Murphy; he also took a canvas bag out of a desk drawer, containing about $50.00 in coins, and Murphy instructed him to put the bills in the bag with the coins, which he did and gave the bag to Murphy. The total amount taken in the robbery was about $250.00.

The two men then forced the station operator to go with them in their car; later, he was let out of the car in the vicinity of the Bartlesville airport.

With reference to the identification of both men, Mr. Pippin gave substantially the same testimony at the preliminary hearing; at the hearing on defendants' motions to suppress evidence, and to quash the information; and later at defendants' trial. At defendants' trial the complaining witness made positive "in court" identification of this defendant. His summarized testimony was as follows: During the time the two robbers were in the service station business office, which was well lighted, and while he was in the vehicle with them, he was within three feet of both men. He testified that from his total experience with them, he was able to identify Murphy as the driver of the car, and defendant Powell as the passenger in the car when he was forced to accompany them.

In addition, Mr. Pippin made sufficient identification of the automobile, which was later found parked in a Bartlesville Bank parking lot. A tire gauge was found in the back seat of the parked car similar to the one Mr. Pippin dropped out of his pocket when he was released.

The question presented in defendant's first proposition concerns the identification of this defendant. The trial court overruled defendant's motion to suppress the "in and out" of court identification of defendant made by Mr. Pippin. We believe the court's action in denying defendant's motion was correct.

Defendant relies primarily on this court's pronouncements in Thompson v. State, Okl.Cr., 438 P.2d 287 (1968), to support his first proposition of error. In that case, at page 288, this Court said:

"[I]n applying this test, the [Supreme] Court went on to state matters

which should be considered in making a determination, as follows:

'Application of this test in the present context requires consideration of various factors; for example, *the prior opportunity to observe the alleged criminal act,* the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification * * *.' " (Emphasis added).

Within an hour and a half following his first look at the robbers, the complaining witness was shown three pictures and picked out defendant's picture. He picked the defendant from among several who were submitted for view and specifically denied that the owner of the car—who had reported his car as having been stolen—as being one of the two men.

■ We observe the United States Supreme Court stated in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968):

"[W]e hold that each case must be considered on its own facts, and that convictions based on eye witness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

In *Simmons* the bank employees saw the bank robbers for about five minutes in a well-lighted bank in the afternoon. One day later the bank employees were shown six photographs with Simmons and his co-defendant in them. All five witnesses identified Simmons as one of the bank robbers. The Supreme Court held that Simmons was not denied due process and sustained his conviction for armed robbery.

■ In the instant case the complaining witness was with the defendant in the well-lighted service station office, and was with him for almost an hour, even though he was required to lay in the back seat of the car. Notwithstanding defendant's complaints, we believe the witness was able properly to identify him as the participant in the robbery. Nor do we accept defendant's complaint concerning his not having counsel present when defendant was brought in view of Mr. Pippin. He had already provided descriptions of both men, and as in Simmons v. United States, supra, we hold defendant was not denied due process under the facts of this case.

■ Defendant's complaint that the trial court erred when he was denied a continuance in order to permit the examination of the state's Exhibit 2, the gun, is without merit. Defendant asserts that because the prosecution made reference to the gun in its opening statement, which had not been furnished defendant for examination by a gunsmith and fingerprint expert, he was entitled to a continuance at the time of trial to examine the evidence. On April 10, 1969, the court entered an order directing the State to allow the defendant to examine certain evidence, at which time the State was not in possession of the gun. The gun was not found until April 19, and the trial commenced on April 21, so we fail to see how the defendant was prejudiced by the court's denial. Defendant cites no authority to support his contention in this proposition, as well as the other propositions he sets forth in his brief.

We therefore conclude that defendant's propositions are without merit and that he was not prejudiced by the court's denial of his said motions. Defendant received a fair trial, according to due process of law. The jury found him guilty and assessed his punishment. After reviewing the record before this Court, we are of the opinion defendant's conviction sustained in the District Court of Osage County, Oklahoma, in which he was sentenced to serve twelve (12) years imprisonment under the

direction and control of the Department of Corrections should be affirmed.

It is so ordered.

NIX, J., concurs.

BUSSEY, J., not participating.