George Arwood **STIDHAM**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–17114.

Court of Criminal Appeals of Oklahoma.

March 13, 1973.

Roger W. Griffith, Mattoon & Griffith, Norman, for appellant.

Larry Derryberry, Atty. Gen., Jeff L. Hartmann, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge.

Appellant, George A. Stidham, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Cleveland County, Case No. CRF–71–37, for the crime of Murder. He was sentenced to serve a term of life imprisonment in the state penitentiary in accordance with the verdict of the jury, and a timely appeal has been perfected to this Court.

The record discloses the following facts. Billy Bob and Connie Cunningham testified that Jackie Jo Unsell was living with them in Oklahoma City on January 29, 1971. At approximately 4:00 p. m. on that date, the defendant arrived at the Cunningham home with a 12-gauge shotgun in his possession. Mrs. Cunningham observed the shotgun being placed in defendant's car before he left a few minutes after 4:00 p. m. Defendant returned to the Cunningham home at approximately 5:00 p. m. and told Billy Bob that he would kill anyone before he went to the penitentiary for a hundred years and that he was not going to let anyone "snitch" on him. To which Cunningham replied, "No, me neither."

The defendant then left the house in his automobile at approximately 5:30 p. m. with Jackie Jo Unsell, who was carrying an overnight case, a paper sack containing clothing, and a purse. They drove to the defendant's mother's home where they finally left at about 8:00 p. m., again in defendant's automobile.

The next time the defendant was seen that night was at approximately 11:15 p. m. at Lake Thunderbird in Cleveland County. Witness Songer testified that he recognized the defendant as the person he had helped to pull a car from the lake that night. The auto was located four to four and one-half miles east of the Franklin Store where the road runs into Lake Thunderbird, and was approximately 20 feet into the lake. Songer testified that the defendant's clothes were wet nearly to his waist.

Defense witness Rackley testified that the defendant visited his Oklahoma City home at approximately midnight on the night of January 29, 1971; and that defendant's clothing did not appear wet or muddy at that time.

The defendant's mother, Mrs. Marshall, testified that the defendant arrived at her

home at about 12:15 a. m. on the 30th of January; that there was nothing unusual about his appearance or clothing; and that she did not observe any mud on defendant's automobile.

The body of a young woman, later identified as Jackie Jo Unsell, was discovered near the community of Franklin, in Cleveland County, Oklahoma, during the morning of January 30, 1971. The County Medical Examiner examined the body at the scene and was of the opinion that the cause of death was a gunshot wound in the right lower rib cage and that there was another wound in the right hip; that death occurred before midnight January 29, 1971, and probably twelve hours before his arrival at 9:00 a. m. on the 30th. During the autopsy, shotgun wadding, later identified as from a 12-gauge shotgun, was removed from the body of the victim as well as shotgun pellets, later identified as number four pellets.

The defendant was arrested without a warrant at approximately 9:00 p. m. January 30, 1971, in Oklahoma City and advised of his rights. Following arrest, the defendant was taken to the Cleveland County Jail and incarcerated. At 3:15 p. m. on Sunday, January 31, 1971, the defendant was interviewed by the Sheriff concerning the death of Jackie Jo Unsell after the defendant had executed a written advice of rights form. The defendant stated that he last saw Jackie Jo Unsell around 10:30 p. m. on the 29th when he let her out of his car in Oklahoma City where she had parked her auto.

The following morning (Monday, January 31), the defendant was arraigned and again advised of his rights. After acknowledging that he understood his rights, the defendant asked the Sheriff to tell him what evidence he had on the case. After the Sheriff complied the defendant replied, "I won't take this alone. I took the victim out there, but I didn't shoot her. Billy Bob Cunningham shot her." The defendant then directed the Sheriff to the death scene; the area where shotgun shells

and a shotgun were thrown from the car; the place where the victim's overnight case, clothes and purse were disposed of; and the location where the defendant drove his car into the lake. The articles were later found by the police to be generally where the defendant had indicated. The gun found was identified as a 12-gauge shotgun which had fired the number four shells also found at the scene.

I

Defendant's first, second and third propositions may be discussed together since they concern defendant's motions to suppress evidence which were overruled by the magistrate and the trial court.

Defendant contends that the arresting officer did not have sufficient cause to arrest the defendant for murder; that the warrantless arrest was thus illegal; that the evidence obtained at the death scene was a fruit of defendant's statements made after his arrest; and that as fruits of the original unlawful arrest, they were, as a matter of law, inadmissible. After reviewing the record, we find that the motions to suppress evidence were correctly overruled.

Both the magistrate and the trial court found that there was probable cause for arrest under 22 O.S., § 196. Giving due weight to these findings, we think them amply justified by the facts in the record. Title 22 O.S.1971, § 196, provides in part:

"A peace officer may, without a warrant, arrest a person:

* * * * * *

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

▆▆ This Court set forth the standard by which facts allegedly constituting "reasonable cause" are to be measured in Cudjo v. State, Okl.Cr., 489 P.2d 1101, 1105, as follows:

" * * * If the facts are such that a reasonably prudent man would have believed the accused guilty, and would

have acted upon that belief, a police officer is justified in making an arrest without a warrant (for a felony). * * *"

See State v. Chronister, Okl.Cr., 353 P.2d 493. There need not be absolute, irrefutable cause. Welch v. State, Okl.Cr., 236 P. 68.

■ The record of the hearing conducted on defendant's motion to suppress reveals that the investigating officers knew that the victim Unsell had been shot by a shotgun. The victim was later identified and officers interviewed Billy Bob and Connie Cunningham in whose home the victim had been living. From them it was learned that the victim had been last seen with the defendant; that the defendant had had a shotgun in his possession at that time; and that the defendant had made threatening remarks about the victim. We find these facts to be sufficient for the magistrate and trial court to rule that probable cause for arrest was shown and the arrest was legal.

■■ But even if the arrest were illegal, the evidence to which defendant objects does not come within the "fruit of the poisoned tree" doctrine. The proper question in such a case is to determine whether the objected evidence has been obtained by exploitation of the original illegality or by means sufficiently distinguishable to be purged of the primary taint. Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441. The relationship between an arrest and a statement given several hours later is obviously different from one in which the statements in question were made at or very near the time of arrest as was the case in *Wong Sun.* Collins v. Beto, 348 F.2d 823 (5th Cir., J. Friendly, concurring). An original taint may be removed by intervening circumstances. Walls v. State, Okl.Cr., 491 P.2d 320.

■ In the case at bar the defendant made the allegedly tainted statements 39 hours after his arrest. He had been warned of his rights at arrest and had

signed a rights form prior to questioning. The record shows that the defendant voluntarily gave the information about the location of the evidence without force or inducement by the questioning officers. He did so after being confronted with the evidence against him which was the result of an independent investigation, completely apart from any statements by the defendant. These intervening factors taken together are sufficient to purge the later obtained evidence from any "taint" from an allegedly illegal arrest.

■ The defendant's second point involving his motions to suppress is that there was an unreasonable delay in taking the defendant before a magistrate which in effect made his statements coerced. Defendant cites Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 in support. However, this ruling is based solely on the authority of Rule 5 of the Federal Rules of Criminal Procedure and thus does not apply to this state court. The right to come before a magistrate in reasonable time is not a federal constitutional requirement. Delaney v. Gladden, 397 F.2d 17, 20 (9th Cir. 1961), cert. denied, 393 U.S. 1040, 89 S.Ct. 660, 21 L.Ed. 2d 585.

■ The established rule in this state is that the burden is on the defendant to demonstrate prejudice by reason of the delay in addition to the delay itself. Brown v. State, Okl.Cr., 384 P.2d 54. Dimsdle v. State, Okl.Cr., 456 P.2d 621. A delay of 33 days has been held not prejudicial on its facts. In re Dare, Okl.Cr., 370 P.2d 846.

■ The record before the court shows that defendant was arrested at 9:00 p. m. on Saturday and was arraigned at 10:00 a. m. the following Monday. Defendant has made no attempt to demonstrate prejudice by reason of this delay, if any. It is relevant that defendant knew he had been arrested on a murder charge, and was aware of his right to remain silent, and to have counsel present. The record reveals none of the evils which a prompt judicial hear-

ing are designed to prevent. Defendant's contention is without merit.

## II

▮▮▮▮ In proposition four of the brief, defendant challenges the sufficiency of the evidence presented at the preliminary hearing. This objection was not properly preserved and cannot be considered on appeal. Defendant's Motion to Set Aside Information failed to comply with 22 O.S., § 494 (1971), in that it was not verified. This issue is thus not properly before this Court. Crum v. State, Okl.Cr., 383 P.2d 45. However, if it were properly before the Court there is no merit in the proposition inasmuch as there was ample evidence before the magistrate to find the crime charged had been committed and probable cause to believe the defendant guilty thereof and to hold him for trial.

## III

▮▮▮▮ The defendant's next contention is that the trial court erred in refusing to allow a full disclosure to defendant of statements made to police by two state's witnesses.

Defendant cites State ex rel. Sadler v. Lackey, Okl.Cr., 319 P.2d 610, to support his proposition that the witnesses' statements made to the police should be made available to defense counsel. However, that case is clearly distinguishable from the case at bar. In the Lackey case, defendant was attempting to obtain technical reports made by the FBI which were the only sources of the information which they contained. Because of the unusual circumstances of the report and the fact that the information was not available elsewhere counsel was given the reports.

In the instant case, the defendant had ample opportunity for cross-examination of these witnesses prior to trial and the information given by the witnesses was not of such a nature that it could not be obtained by the defendant from other sources.

This court stated in Shapard v. State, Okl.Cr., 437 P.2d 565, that it follows the

general rule as expressed in 23 Am.Jur.2d, Depositions and Discovery, § 317, as follows:

"* * * an accused is not entitled to discovery and inspection of statements of a prosecution witness in the possession of the state, of the transcript of the statement of a state witness taken before a prosecuting officer preparatory to trial, or of the 'work product' of the prosecutor consisting of statements signed by others than the defendant. * * *"

See also State ex rel. Fallis v. Truesdell, Okl.Cr., 493 P.2d 1134; Doakes v. District Court of Oklahoma County, Okl.Cr., 447 P.2d 461.

Defendant's request for disclosure in this case falls squarely under the rule espoused in *Shapard*; therefore, defendant's contention cannot be sustained.

## IV

▮▮▮▮ The defendant next alleges that the trial court erred in not sustaining his motion to appoint a psychiatrist at the expense of the State. The record shows that upon motion of defense counsel, before trial defendant was committed to Central State Hospital for observation of his mental condition. The examining psychiatrist later filed a report with the court certifying that the defendant was legally sane. The defendant then moved that the court appoint a psychiatrist for the exclusive benefit of defendant because as an indigent due process under the Sixth and Fourteenth Amendments required such action. The motion was correctly overruled.

Defendant cites two cases which he alleges establish his right to appointment of a private psychiatrist at State expense. Hintz v. Beto, 379 F.2d 937 (5th Cir. 1967) held that it was error for a trial court to deny a defense motion for continuance for the purpose of evaluating a psychiatric report received on the day the trial commenced. The rationale of the case was that a defendant's constitutional right to counsel included affording defense attor-

ney adequate time to prepare a defense. Nothing in the case supports the contention that an indigent defendant has a right under the Sixth or Fourteenth Amendments to employment of a private psychiatrist by the State.

In United States v. Pate, 345 F.2d 691 (7th Cir. 1965), the defendant pled insanity at the time of the offense and at trial. The trial court denied a one day continuance for the defendant to obtain the volunteer testimony of a psychiatrist who could appear the following morning. It also said a State doctor's testimony on sanity was not needed and was thus not given. The appeals court held that the trial had been conducted under an "undue preoccupation with hurried disposition in an atmosphere charged with haste," one result of which was that the indigent defendant was denied "a fair opportunity to obtain volunteer expert testimony from a public agency." The case closed with no psychiatric witness called to give testimony either on the defense of insanity or on the defendant's competence to stand trial. *Robinson* does not anywhere state that an indigent defendant must be furnished with a private psychiatrist at State expense. It does not support defendant's proposition.

Other cases have rejected the defendant's argument as insufficient to show violation of constitutional rights. United States ex rel. Smith v. Baldi, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549; Watson v. Patterson, 358 F.2d 297; McGarty v. O'Brien, 188 F.2d 151, 1 Cir.; see Anno., 34 A.L.R. 3d 1256. Defendant has thus failed to establish his contention of error.

Defendant also alleges in this regard that the psychiatrist's report filed in this case was insufficient to inform counsel of defendant's mental condition at the time of the alleged offense, thus denying defendant of the affirmative defense of insanity.

■ The essential portion of the State psychiatrist's report reads as follows:

"We find that Mr. Stidham is not mentally ill according to the laws of the State of Oklahoma. He is able to distin-

guish between right and wrong and is capable of advising an attorney in his own defense."

This report was entirely sufficient under 22 O.S.1971, § 1173, which provides that the case shall proceed if in the doctor's opinion the patient is "presently sane." The question of sanity at the time of the commission of the alleged offense is a question of fact for the jury. O'Dell v. State, Okl.Cr., 455 P.2d 750. The testimony of experts as to defendant's sanity at the time of the psychiatric examination is only evidence to be considered along with other testimony on the issue of sanity at the time of the alleged offense. The expert's testimony is not conclusive on that issue. Jones v. State, Okl.Cr., 479 P.2d 591.

■ However, in this case defendant did not plead not guilty by reason of insanity. Nor did he produce any evidence— from persons who witnessed the defendant's behavior at the time, for example— that might raise the issue of defendant's sanity at the time of the alleged crime. Finally, he cites no authority to support his contention on appeal. We conclude that there is no evidence that the defendant's case was prejudiced by the psychiatrist's report.

V

Counsel for defendant contends that the trial court erred in not sustaining a motion for continuance due to adverse pretrial publicity.

■ It is well established that decisions denying Motions for Continuances for adverse pretrial publicity are not reviewable except where there has been a clear abuse of that discretion by the trial court. Finnegan v. United States, 204 F.2d 105; Mott v. State, Okl.Cr., 232 P.2d 166. We find no such abuse in this case.

The Oklahoma law on this matter is perhaps best contained in Shapard v. State, Okl.Cr., 437 P.2d 565, cert. denied, 393 U. S. 826, 89 S.Ct. 89, 21 L.Ed.2d 97. This Court then adopted the language used in

**1320**

United States v. Hoffa, D.C., 156 F.Supp. 495:

"Mere fact that there has been widespread adverse pretrial publicity about defendant does not, by itself, establish reasonable probability that defendant cannot obtain a fair and impartial jury at criminal trial and is therefore entitled to postponement of trial for indefinite or substantial period of time."

We further stated in *Shapard* that the proper procedure in a vast majority of such cases was not to postpone the trial but to proceed to determine on voir dire of the jury whether a fair trial was possible. 437 P.2d 565, 578.

The record in this case reveals a thorough voir dire examination of the jury by the court and by counsel. All jurors stated they could base their verdict on the evidence alone and lay aside any pre-conceived notions they may have formed from what they had read, heard, or discussed. This is a sufficient standard of fairness under Oklahoma law. Shapard v. State, *supra*.

## VI

The eighth proposition of error claimed by defendant in his brief is the overruling of a Motion to Quash the Jury Panel on the ground that the statutory method of selection deprived defendant of a jury of his peers. Defendant charges that his rights were violated because no non-property owners or non-taxpayers were included on the jury panel chosen according to 38 O.S.1971, §§ 18 and 33.

This Court upheld the constitutionality of this State's jury selection statutes in Acuff v. State, Okl.Cr., 283 P.2d 856. This decision was cited with approval in the 1969 case of Porter v. District Court of Oklahoma County, Okl.Cr., 462 P.2d 338. The same result was reached in two other recent cases. Moore v. State, Okl. Cr., 461 P.2d 1017, and Wolfchief v. State, Okl.Cr., 461 P.2d 949. Furthermore, the burden is upon the defendant to show that he was prejudiced in some manner by the selection system. In *Wolfchief, supra,* this Court quoted the earlier case of McKinnon v. State, Okl.Cr., 299 P.2d 535, with approval:

"* * * To entitle a defendant to successfully challenge a panel of jurors, the burden is upon the defendant to show that the wrong complained of is such as to have caused the defendant to suffer material prejudice. * * *"

In this case, the defendant failed to show how he had suffered any material prejudice by the selection of the jury panel and thus this claim of error is not established.

## VII

Defendant next objects to the in-court identification of the defendant by witness Roy Songer because photographs were used to make the initial pretrial identification.

The leading case on pretrial photographic identification of suspects is Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. At 390 U.S. 384, 88 S.Ct. at 971, the Court held that:

"* * * [E]ach case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground *only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.* * * *" (Emphasis added)

The record discloses that Witness Songer observed the defendant at approximately 11:30 p. m. on January 29, 1971 for a period of from five (5) to seven (7) minutes, during which time the defendant was illuminated by two lanterns and a "big fire". Approximately four (4) days later Songer was shown five (5) photographs by a deputy sheriff. In four of the pictures, the men were wearing shirts. The defendant was pictured without a shirt. Songer then tentatively identified defendant's photograph as the man he saw on January 29, 1971.

Subsequently, at the preliminary hearing and at the trial, Songer positively identified the defendant. The trial court conducted a hearing out of the presence of the jury to determine whether the in-court identification was tainted by the pretrial photographic identification. Songer then testified that he could make the in-court identification on his independent recollection from the scene on January 29, 1971, and on that alone. Defense counsel failed in his brief to demonstrate how the identification was tainted as a matter of law. Analysis of the record provides insufficient evidence to establish that the photographic procedure was impermissibly suggestive such as to give rise to a "very substantial likelihood of irreparable misidentification."

Defendant cites Chandler v. State, Okl.Cr., 461 P.2d 983, and Stewart v. State, Okl.Cr., 458 P.2d 646, in support. However, these cases together require that the trial court conduct a hearing on the identification issue outside the jury's presence. This requirement was met here. When the evidence shows, as it does here, that the in-court identification was based on independent recollection and that the photographic procedure was not impermissibly suggestive, then the in-court identification is properly admitted. Gonzales v. State, Okl.Cr., 480 P.2d 930; Powell v. State, Okl.Cr., 478 P.2d 923; see also 39 A.L.R.3d 100.

## VIII

Defendant contends next that certain remarks by witness Wheeler that defendant was taken to Central State Hospital were grounds for mistrial. This contention was not supported by authority or argument explaining how such a remark was prejudicial. Since no fundamental right of defendant was denied and the Court feels that the statement was not inherently or seriously prejudicial, this contention of error is without merit. Sandefur v. State, Okl.Cr., 461 P.2d 954.

## IX

The eleventh proposition of error alleges the trial court erred in refusing defendant's requested instruction defining accomplices and the requirement for corroborating their testimony as provided in 22 O.S. 1971, § 742. It is admitted the tendered instruction by defense counsel correctly stated the law, and we agree. Section 742, *supra*, is as follows:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

This proposition is urged in reference to the testimony given by State's witness Billy Bob Cunningham in chief, in substance as follows: He testified that Jackie Jo Unsell, the deceased named in the Information, had been and was living in the home of he and his wife, Connie Cunningham, on January 29, 1971, on which date, at the approximate hour of 4:00 p. m., the defendant appeared with a shotgun which he had sawed off without permission although it belonged to Billy Bob Cunningham. After remaining at the Cunningham home a short while, defendant left with the gun and again returned and had a conversation with Mr. and Mrs. Cunningham in which he stated, "He wouldn't do a hundred years for anybody. . . . Nobody was going to send him to the penitentiary for no hundred years." To which Cunningham replied, "No, me neither." Shortly afterward, defendant and Jackie Jo Unsell left the Cunningham home, driving away in defendant's automobile.

Cunningham testified further that later, about 12:30 or 1:00 that night, he again saw the defendant, who told him, referring to Jackie Jo Unsell, that "he had done her in and left her in a ditch."

The defendant did not testify in his own defense but the limited evidence offered by

him was in the nature of an alibi. However, the record reflects that defendant made statements to law enforcement officers which implicated Billy Bob Cunningham as an accomplice, if not the actual perpetrator of the crime itself.

Sheriff Porter, as a State's witness in chief, testified defendant, after arrest and while in custody, first told him that the last time he had seen Jackie Jo Unsell was around 10:30 on Friday night when he let her out of his car at 74th and Shields. He further testified that on a later occasion the defendant voluntarily stated to him, "I won't take this alone. I took the victim out there, but I didn't shoot her. Billy Bob Cunningham shot her." He then directed the Sheriff to the scene of the crime, relating in detail happenings and locations of items later admitted into evidence. Sheriff Porter continued in his testimony that while at the scene defendant related, "Billy Bob told her to get out of the car, and then he walked around the back of the car, and the next thing he knew he heard one shot, and then he said, 'Oh, Lord, what was that!' And then he heard another shot and he said that he thought that Billy Bob had gone crazy or something and that he jumped in the car and said 'let's get out of here!' " He then said he and Cunningham drove away at a high rate of speed. Sheriff Porter also testified that defendant showed him where his car got stuck in the lake, where he said Cunningham threw the shotgun away, and where certain personal effects belonging to the deceased were left.

The State's evidence in chief included the testimony of Undersheriff Wheeler, who testified the defendant told him, "That he didn't do it by himself, that Billy Bob shot her the first time and handed the gun to him and said if he didn't use it on her he was going to use it on him."

■ The State contends the statements made to the officers were self-serving declarations, therefore, incompetent and the trial court did not err in refusing the requested instruction on accomplice testimony. We do not agree. The State produced the officers as witnesses in chief and elicited from them admissions made by the defendant, including those, although self-serving, implicating Billy Bob Cunningham.

We are of the opinion that the Court should have given the jury the requested instruction as to accomplices and the statutory rule on corroboration. However, in light of the entire record in this case, we do not believe the failure amounts to reversible error; we are of the opinion that 20 O.S.1971, § 3001, which provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless it be the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

is most applicable.

Although we have serious doubt that the failure to so instruct constituted a violation of a federal constitutional right, we find the error to be harmless, and we are satisfied beyond a reasonable doubt that the error did not contribute to defendant's conviction. See Chapman v. California, 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824.

The record in this case reflects an abundance of evidence, entirely independent and free from the testimony of Billy Bob Cunningham or any and all statements attributed to him by the defendant, to warrant the jury in finding the defendant guilty of murder. Although the State was not required to use or rely on Cunningham's testimony in its case in chief, it did present corroborative evidence far in excess of the most stringent interpretation that could possibly be given 22 O.S.1971, § 742.

## X

During the course of the trial the trial court overruled defense Motion for Continuance on two occasions. Defendant urges that the submission of the case to the jury at 10:04 p. m. on the same day the trial had begun prejudiced the defendant because full and deliberate thought was unlikely after such a long and laborious day of testimony.

 To support his position the counsel cites Davis v. State, Okl.Cr., 413 P.2d 920. *Davis* dealt with the improper cross-examination of a defendant on collateral issues and lends no support to the position of defendant herein. The general rule is that there must be an abuse of discretion before a trial court will be overruled on a matter of granting a continuance. Review of the record discloses no such abuse. Neither does the record support defendant's contention of surprise.

## XI

Defendant alleges that the verdict and punishment rendered were not based on sufficient evidence. The defendant does not demonstrate how the evidence is insufficient.

 It is well settled that this court will not reverse if there is substantial evidence, although circumstantial, from which a reasonable and logical inference of guilt arises. Hurley v. State, Okl.Cr., 416 P.2d 967. Where the evidence is conflicting and different inferences may be drawn, it is the exclusive province of the jury to weigh such evidence and decide the facts. McCluskey v. State, Okl.Cr., 372 P.2d 623. This record presents sufficient competent evidence from which a jury could conclude that defendant was guilty of the crime of Murder.

Defendant's final contention that an accumulation of errors, no one of which is sufficient for reversal, taken together constitute reversible error, is without merit.

Accordingly, the judgment and sentence is affirmed.

BUSSEY, J., concurs.

BRETT, J., concurs in results.